The People, *ex rel.* Brewster and Jones *v.* Kilduff.

---

The People, &c., *ex relatione* Theron D. Brewster and Henry Jones *v.* Patrick M. Kilduff.

### APPLICATION FOR A MANDAMUS.

The election law makes it the duty of the judges or board of election to make out a certificate, &c., and returns, &c., to proper officers, who constitute a board of election canvassers; but where no contest is entered, this latter can only declare the result shown by the certificates. They do not pass upon the qualification of voters, nor decide as to what ballots shall be counted.

These questions can be decided by the proper board upon a contest.

The mayor and aldermen of Peru were a board to canvass the certificates of the judges of election for like offices, but they improperly assumed to canvass the ballots, rejected some of the ballots on account of the color of the paper, without any contest of the election, and declared themselves elected.

Ballots upon paper tinged with blue, which has ruled lines, not placed there as marks to distinguish the ballots, are upon white paper within the meaning of the statute.

The legality of an election does not depend upon the fact of the declaration of the board of election; if withheld, or not made through illegal causes, the office will vest; the authority, rights, and powers of officers are derived from the election and not from the returns.

Mandamus is a proper remedy against an ex-mayor to obtain possession of a seal, books, papers, muniments, &c., the property of the corporation; and a pretended intrusion into or retention of the office of mayor, will not justify the withholding of such property, so as to drive the informant to resort to a *quo warranto.*

Every intendment is made against a return to a writ of mandamus, which does not answer the important facts; and where it is shown that a party had a seal on the fifteenth of June, it is not sufficient to avoid the writ by returning that he had no control over or possession of it in July, unless he shows how he has parted with the control.

THE petition showed that the city of Peru was organized according to charter, and first officers elected in April, 1851; was divided into two wards and so continues; that at the annual election, April, 1854, Brewster was elected mayor, instead of Patrick M. Kilduff, whose term expired. Birkenbend was elected alderman of first ward, in the place of McCormick, whose term expired; and Dana alderman of second ward, in place of C. A. Holmes.

Churchill Coffing, first ward, and John L. Coates, second ward, were the aldermen holding over till 1855. At the time of election Coffing was absent from the State, and until on or about 27th of May, 1854.

That on the 11th of April, Brewster, Birkenbend, and Dana took and subscribed the oath, same as required by statute; on the same day filed certificate with the then clerk of the city council, " of which the said Kilduff then or immediately thereafter was informed."

Within a day or two after they so qualified, Brewster called a meeting of council, of which Coates, Birkenbend, and Dana were notified, (all of the council except Coffing, who was absent,) all of whom assembled at the council room, or place of usual meeting; did not organize then; on proposal of Coates to adjourn to 22d of April, in the hope that Coffing might return to meet with them, proposing to telegraph him.

Afterwards (Coffing not having returned) Brewster, as mayor, called a special meeting at council room on said 22d of April; at which time council met and organized, namely, Brewster, Coates, Birkenbend, and Dana; but Coates took no part in the proceedings except to be present.

Proceedings of that meeting given — 1st, declaring result of election; 2d, electing town-clerk and other minor officers; adjourned to meet at office of Mr. France. Dana, at that meeting, acted as clerk *pro tem.*

Coates attended no subsequent council meetings, and refused to; council meetings were held April 29th, May 6th, May 13th, May 20th, and May 27th, (weekly,) attended by Brewster, Birkenbend, and Dana, being a quorum; sundry meetings were held in June; that from 1st of April to 1st of June, 1854, no other assembly in the city, professed, pretended, or were reputed to be the city council.

At the council meeting on the 6th of May an ordinance was adopted, that the seal, records, &c., should be kept in the charge of the clerk, subject to the direction of the city council, making it the duty of the clerk to demand possession, providing penalties, and providing that the clerk, under the direction of the

The People, *ex rel.* Brewster and Jones *v.* Kilduff.

mayor, should institute such legal proceedings as might be necessary or proper, which ordinance was published on the 9th of May; that afterwards and before the 15th of May, Jones demanded the seal, records, &c., of defendant, which defendant refused, but admitted that he had possession or control of them; that on the 15th of May the city commenced replevin against the defendant for seal, records, &c., in the county court, returnable first Monday of June. On said 15th of May the sheriff made service, demanded property of Kilduff, which was refused; got some books, but not the seal, Kilduff at the time stating to the sheriff, that he had the seal, &c., but would not give them up; that the election returns were not opened and counted; that so far as known or believed, defendant still has possession of the seal, and refuses to deliver it up to Jones, or any one authorized by the city council to receive it (meaning the council in which Brewster presides).

Brewster claims to be mayor, based on the following facts:—First, sets forth divers provisions of the charter. Second, that the council never made any ordinance to regulate the election of city officers, except to determine a tie vote for mayor by lot. Third, that at all elections heretofore held, they have been at the same places in each ward, the council first giving notice, and by resolution or order appointing the voters in each ward as judges of the particular election, who have acted, or if any failed to attend, those present filled vacancies; the judges appointing clerk or clerks, the votes, given by ballot, the voters adopting and concurring in this mode of holding elections; that poll books have been made out, the votes given, certified by the judges or a majority of them, and delivered to the mayor, (except the first election, when returns were delivered to the mayor elect). And, excepting the annual election of 1854, the mayor has opened the returns and filed them with the clerk; that prior to the election of April, 1854, the council gave notice of time and places of election, and by resolution appointed three judges for each ward; that on the day of election, one of the judges for first ward failed to attend, the other two filled his place, the three acted without objection from the voters, and appointed two clerks; in second ward all the judges appointed acted, and appointed two clerks; that at said election of 1854 Brewster was candidate for mayor, and defendant for reëlection. Birkenbend was candidate for alderman for first ward, and John L. McCormick for reëlection. Brewster received in the city 162 votes for mayor, and Kilduff 116 votes, majority 46 votes. In first ward Birkenbend had 77 votes for alderman, and McCormick 67 votes. In both cases a majority of all the votes cast.

In the first ward two of the judges counted, made out, and cer-
tified the returns, as above, and all the judges in the second
ward, which returns were, within a day or two, delivered to
defendant, as mayor; that all the ballots by which said votes
were cast, were received by the judges and deposited in the
ballot-box in the usual manner of voting by ballot; that most
of the ballots for Brewster and Birkenbend were on common
ruled foolscap of a bluish tinge; that Guy Herlett, one of the
judges in first ward, though present, refused to unite in counting
and certifying the vote, because the other two included and
counted the vote on such foolscap paper.

That Brewster did not select or direct the kind of paper on
which said ballots were printed, and so far as he knows or be-
lieves, that kind and complexion of paper was not adopted
with any intent to distinguish one ballot from another.

That if the votes on such paper had not been cast nor
counted, defendant and McCormick would have been elected.

That after the election and delivery of returns to defendant,
defendant claimed that the votes on such paper were illegal;
that two of the old aldermen were out of office; that those
elected could not take office until the council counted and took
action on the returns; that defendants Coffing and Coates were
the only members of the council who could act; that in Coffing's
absence no action could be had, and refused to open the elec-
tion returns, or to permit those elected to do so.

That Dana's election was not subject to such pretended ob-
jection, and was not questioned.

That the result of the election was well known to Brewster
and the voters generally immediately after.

That after defendant refused to open the returns or permit it,
Brewster, Birkenbend, and Dana, qualified as before stated, and
proceeded to discharge their official duties.

States the previous practice in installing new members to be
as follows: —

At the first election in 1851 the returns were handed to the
mayor elect, by a judge of each ward; council met; returns
entered on record; no other action taken on the subject of elec-
tion, except that the members of the council were sworn in.

At second election in 1852, the first council meeting included
the new members as well as those holding over. The mayor
(reëlected) and two new aldermen took the oath. The member
elect for the second ward was an entire new member.

The next proceedings for those two years were to elect clerk,
treasurer, &c.

At the third election, in 1853, there were doubtful questions.

The question, whether there was a tie vote for mayor between Kilduff and H. S. Beebe, (who were the candidates) ; also as to an alderman for first ward ; Morris had moved back into second ward ; no declaration of a vacancy had been made by the council or other authority; no election to fill the vacancy was ordered ; but most of the voters in the first ward voted for two aldermen, without designating which was for full term, or which for 'vacancy. The judges of election counted the votes ; Coffing had the highest vote, and McCormick the second highest. There were doubts at the time as to who constituted the board that were to pass upon said doubtful questions. At that election Coates was chosen alderman in the second ward.

After that election, before any council meeting, Coates and Coffing took oaths of office. The first pretended council meeting was April 11th, at which were the old mayor and the two councilmen, whose terms then expired. They declared that Morris, by removing from first ward, made a vacancy, to be filled by election ; that there was a tie between Beebe and Kilduff for mayor ; that Coffing was elected for first ward, and Coates for second ward ; that no votes were cast for Morris's vacancy, and that the vacancy still existed. No other business at that meeting. On the same day Coffing and Coates filed their oaths of office.

On the next day a council meeting was held of the old mayor, Coffing, and Coates. On motion of Coffing they proceeded " to canvass the votes and returns of the judges of election of the first and second wards, and by comparison to declare who is elected mayor of the city of Peru." They then declared the vote for mayor a tie, and passed an ordinance, to determine by lot who should be mayor in case of a tie vote.

On the 20th of April council met; tie decided in favor of Beebe, who was sworn and took his seat.

Afterwards, on the 6th of June, (Beebe having resigned,) Kilduff was elected mayor to fill vacancy. Next day the four aldermen met, received returns, declared Kilduff elected ; after which Kilduff took oath of office.

The foregoing shows the practice of the city council, on elections, prior to April, 1854.

After Coffing's return to the State, on or about the 27th of April, some six weeks after regular organization of the city council, with Brewster as mayor, and after six council meetings had been held by them, Kilduff, pretending to be mayor, and that Coffing and Coates were the only aldermen who could act, notified them to meet with him as city council on the 1st of June. The three met on that day at Kilduff's office (the late

The People, *ex rel.* Brewster and Jones *v.* Kilduff.

council room), and professing to be city council, and as such to
be the only proper authority under the charter, to inspect, can-
vass, and decide upon the legality of the election; professed to
inspect the ballots, and to purge the same of all that were upon
paper other than white; professed to throw out most of the
votes cast for Brewster and Birkenbend, and to declare Kilduff
and McCormick elected; and also pretended to pass an ordi-
nance declaring Kilduff and McCormick to have been elected.

Charges belief that Kilduff now claims to be mayor by virtue
of these proceedings of himself, Coffing, and Coates. The fore-
going contains all the grounds of Kilduff's claim to be mayor
known to petitioner.

The petitioners represent that they and the city council are
prevented from possessing and using the seal of the city, for
attesting the acts of the city council, or for any purpose author-
ized by the charter.

Prayer for mandamus to defendant, &c., to compel defendant
to deliver into charge and care of petitioner Jones, as clerk, the
seal of the city, to be kept by him, subject to the direction of
the city council, to do what the law requires, and for general
relief.

By agreement, alternative mandamus waived. Return made
to petition as to alternative mandamus. Defendant reserving
any exceptions to petition.

Defendant answers and returns : —

That he has not delivered the seal, as required, and insists
that he ought not, by mandamus, be compelled to do so,
because

1st. He has not individually, or as mayor, had possession or
control of the seal, nor claimed the right of possession or con-
trol, or had it, since the first of July, 1854.

Denies that Jones is clerk *de jure* or *de facto*, or that Brews-
ter is mayor *de jure* or *de facto*, or that Birkenbend is an
alderman of first ward, or member of city council *de jure* or *de
facto*, and never has been.

That Brewster was not elected at the last annual election ;
did not receive a majority of the votes legally cast for mayor;
never was declared elected by the council, nor had possession of
the office.

Same statement as to Birkenbend.

That the association of persons over which Brewster pre-
sided was not in fact or law the city council; nor was their au-
thority as such ever acquiesced in, so generally as to permit
them to become so *de facto*.

That Coates never met with them as a member or as alder-

42*

man. He was present once before the 22d of April, but took no part except to protest that they had no power to organize, and that he would not act as one of such council.

True, that on the 22d of April, Coates was present when the others met, and declared themselves to be a city council, and desired him to act with them, but took no part as such, and protested against their right or authority so to act; expressly stated that he was not there as an alderman and member of the council, but merely to protest, insisting that their acts would be invalid, illegal, and void.

That, under the charter, prior and up to the first Monday of April, 1854, the council consisted of defendant as mayor, Coffing alderman of first ward, and Coates, of second ward, (both elected in 1853 for two years); McCormick, first ward, and Holmes, second ward, whose term expired at the election of 1854.

That shortly after the election of 1854 the poll books and returns were delivered to defendant, (and by him received as mayor,) sealed up.

Defendant believing it the duty of the council to judge of the election, qualification, and returns of the members elect, and that the council then consisted of himself, Coates, and Coffing, and that it required all to constitute a quorum, retained the custody of the returns, (on account of Coffing's absence,) until 1st of June, 1854, when, at a meeting of the council, (composed of defendant, Coffing, and Coates,) respondent delivered them, sealed up, as he received them. While thus in council, the same were opened and canvassed by Coffing and Coates, with assent and in presence of defendant. The proceedings were recorded.

That the meeting was attended by C. M. Herlett, as clerk, who was then and for a long time previous, and before the April election, had been clerk of the council.

Insists that the result was decided by the tribunal provided by law, and is conclusive until set aside by some court having authority to review the same.

Insists that the decision was right and lawful; that the votes excluded were on paper commonly called blue foolscap paper, having blue lines thereon; the color and the lines were so palpably different from plain white paper, that any one, at a glance, could distinguish said tickets. That the paper with color and lines (as respondent has been informed and believes) was selected and used in the preparation of the tickets, with the intention to enable persons to distinguish them from others.

That defendant has had possession of the office of mayor,

and executed the same for more than one year, and is still acting, and has at all times since the first of April, 1854, claimed to be such.

That the question, Who are the city council? has been judicially determined by a court of competent jurisdiction, which judgment remains in full force, as follows — sets forth the commencement of replevin suit, the writ, and return.

That Clawson and Taylor, at the instance of Brewster, filed a declaration. On the 7th of June, 1844, the real city council held a meeting, (consisting of defendant, Coffing, McCormick, and Coates,) and passed proceeding (set forth) directing E. S. Holbrook, as attorney for the city, to dismiss the suit. That on the same day Holbrook appeared and moved to be substituted as attorney, and Clawson and Taylor discharged. Divers affidavits were filed. On the 12th of June the court sustained Holbrook's motion.

Insists, that until the right of said Brewster and Jones to act is established, and they duly installed, their acts are void.

That after the judgment Brewster refused to return the property and books; that Brewster, &c., have never had any of the muniments of office except the books taken on the replevin, and since withheld in defiance of the judgment of the county court. That on divers other occasions, defendant and his associates have met; and that on one or more of the occasions, Dana has met with them in council, as alderman of second ward.

Insists, that if Brewster is mayor, and Jones clerk, the statute has given another remedy. That in any event a mandamus will not lie; but the true writ to try the legal question is by *quo warranto*.

Insists that this proceeding is got up to try a question of contested election, after time for appeal has gone by.

Insists that the facts in petition (uncontradicted) do not authorize mandamus.

That Coates is the treasurer (appointed on the 2d of June), and has possession of treasurer's books.

That as to the action of Brewster, Birkenbend, and Dana, professing to pass on election result, the returns were in defendant's hands, sealed up, and that they had nothing before them to act on.

That at the first election under the charter, Brewster was one of the trustees of the town of Peru, and returns of first election were delivered to him (as respondent is informed and believes), by reason of that fact.

Plaintiffs demur to answer and return, and pray for peremptory mandamus.

J. D. TAYLOR, for relators.

T. L. DICKEY, for respondent.

SCATES, J.    In pursuance of the second section of the sixth article of the constitution, the legislature passed an act regulating elections, in which it was provided (Act of 1849, p. 74, § 15), " that no ballot shall be received or counted, unless the same is written or printed upon white paper, without any marks or figures thereon, intended to distinguish one ballot from another."

By subsequent sections, the judges and clerks of election are required to keep tally lists, and lists of voters, and after the voting is closed, to canvass the ballots, and the " judges or board of election shall make out a certificate under their hands, stating the number of votes each candidate received," &c., and " said certificate, together with one of the lists of voters, and one of the tally papers," &c., shall be kept and returned by one of the judges of election, to the proper persons or officers.    The officers who receive these returns, in a certain sense, constitute also a board of election canvassers.    But where no contest is entered, they can only declare the result shown by the certificates.    But they do not sit to pass upon the qualifications of votes or the reception of the ballots ; nor whether, in making up the result of the poll, ballots should or should not be counted. These questions legitimately arise before this second or any subsequent election board, in cases of contested elections, when they may hear and determine these prior questions.

An application of these provisions to the question at issue, in relation to the election of mayor of the city of Peru will, it seems to me, remove all difficulty in this case, if, indeed, any could be raised upon the face of this record.

On the first Monday of April, 1854, the election was held between Brewster and Kilduff as candidates for the mayoralty. The best and most correct idea I can convey, without attaching a specimen ballot paper, is, that Brewster's friends adopted white paper, and Kilduff's supporters adopted whiter paper. The majority of the judges of election counted these ballots, and certified the result accordingly ; one refusing for the reason of the blue lines ruled on the paper by the manufacturer, and the bluish ground tinge of the paper.    These original ballots, by some means, found their way into the hands of Kilduff, the acting mayor, and he, with the aldermen holding over, canvassed the ballots as judges of election, and not the certificates of the judges who had declared the result at each poll, and

deeming the color a violation of the law, excluded them from the count, and so changed the result, and declared himself and others thereby elected. The record does not show any contest of the election, or notice to Brewster and others, or any trial, other than this voluntary assumption of the powers and duties of the judges of the polls.

This constitutes the ground of error upon which all their proceedings are based. Sitting as a board of election returns, to declare the result from the returns of the judges of election, who are the returning officers, they assume the powers and duties of the returning officers themselves; and instead of canvassing the returns, they canvass the polls and ballots, and declare the result of their own return. This they might do, if they constitute the proper tribunal, in case a contest had been entered. But nothing of the sort is shown.

We are of opinion that the ballots were upon white paper, within the meaning of the statute, and should have been counted; and that the ruled lines were not marks placed upon the ballots for the purpose of distinguishing them, but this paper was accidentally used, and the ballots were received without objection; and their rejection afterwards on that ground would be a fraud upon the voters. That counting them Brewster is admitted to have been elected. He has been duly qualified, and assumed the office, and entered upon the duties of mayor. This he may do; the legality of the election, and the rights, powers, and duties of the office, do not depend upon the fact of the declaration of the board of election. That declaration is proper, and is the usual practice, but withholding it, or neglecting causelessly or illegally to make it, will not prevent the installation in, and investment with, the office. The authority, rights, and powers of such offices are derived from the election, and not from the returns, which are the usual prescribed evidences of it.

The corporation seal has been demanded and refused; and we are informed by the information, that Kilduff had it on the 15th day of June. The return denies all custody or control since the 1st day of July, and further insists, that Brewster is not entitled to a remedy by mandamus in such a case. This is the only remaining question of importance to be noticed.

The general rule is admitted, that mandamus is not the proper remedy to try the title to an office, but the rule has its exceptions. Tapping on Mandamus, 26, 27. For it will lie for offices of a public nature concerning the administration of justice, or any public necessary work for the public weal; and though it is said in the absence of any specific legal remedy, Tapp. on Mand. 173, 174, yet the same author lays it down,

(p. 165, 166,) that the court will grant the writ for the office of mayor, although there has been a void election; or, though there may be a mayor *de facto*, though not *de jure ;* and the court may exercise some discretion according to the circumstances. So if a mere colorable title so set up under a void election or a holding *de facto*, will not afford a ground for denying a writ to proceed to an election of mayor; neither should, in this case, a groundless assumption of an election of defendant, and a pretended exercise of the office *de facto*, to which Brewster is clearly shown to have been elected, prevent us from awarding the writ, because it is pretended that the title to the office is involved. A *quo warranto* is the proper writ to try the question of title to the office. This writ is not asked for that purpose. It is asked, to deliver to the mayor elect and qualified, the seal, the insignia of office. And to defeat the application, and prevent the issuing of the writ for this purpose, this groundless, colorless claim, is set up to the office itself; and the party's pretended intrusion into, or retention of it, is sought to create such a doubt of the true title, or controversy about the title, as to justify the withholding of the writ, and sending the informant to his *quo warranto*.

To the extent necessary to determine upon his right to make this information, and ask to have the delivery of the seal, we have looked into the legality of this election, and so determined upon the color of the adverse pretension.

Of the right to the writ to deliver up the seal to the mayor and clerk of the corporation, we can have no doubt. Tapping says, "the court of King's Bench is in the constant habit of granting a mandamus to command municipal and parish officers, magistrates, &c., on the determination of their official duties, to deliver up the ensigns of their offices," p. 94. " So it lies to command an ex-officer, as a mayor, or his deputy, to deliver to the present mayor the common seal, books, papers, muniments, records, insignia, mace, and chest keys, being the property of the corporation." Ib. p. 94. See The King *v.* Buller et al. 8 East, R. 389; 3 Black. Com. 110; 6 Bacon, Ab. Mand. D. p. 439 top, ed. 1846; The King *v.* Ingram, 1 W. Black. R. 50; King *v.* Wildman, 2 Strange, 879; Borough of Calne, 2 Strange, R. 948.

The return does not traverse or answer the possession of the seal in June. It is not sufficient to avoid the writ, to return that he had no control or possession in July, unless he shows how he has parted with that control and become divested of the possession, which, by his silence, he admits was in him in June. Every intendment is made against returns which do not answer the important facts. Tapp. on Mand. 349, 350, *et seq.*

For any thing shown by the return he has the control of the seal, and ought to surrender it to the informants. Therefore a peremptory mandamus awarded.

*Peremptory mandamus awarded.*