| 51 | 191 |
| 129 | 284 |
| 51 | 191 |
| 46a | 439 |
| 51 | 191 |
| 215 | 238 |

THE PEOPLE OF THE STATE OF ILLINOIS *ex rel.*

AMERICAN CENTRAL RAILWAY

*v.*

THE SUPERVISOR AND TOWN CLERK OF OHIO GROVE

TOWNSHIP, MERCER COUNTY.

1.  MANDAMUS—*writ is the declaration—return the plea.* In proceedings for a *mandamus*, the alternative writ stands for the declaration, and the return as a plea.

2. Same—*requisites of a return.* The return to a writ of *mandamus* must positively and distinctly set out the facts, so that the relator may traverse the same.

3. It is not sufficient to aver conclusions of law. And if the facts are not stated, or if insufficiently stated, the plea will be held bad.

4. Greater certainty is required in a return, than in an ordinary plea in bar, and every intendment is made against a return to a writ of *mandamus*, which does not answer the important facts.

5. Election—*registry law.* An election to subscribe stock to the American Central Railway, as provided by the amendment to the charter of said railroad, passed February 21, 1859, is not within the registry law.

This was an application to this court, for a writ of mandamus in the name of the people, upon the relation of the American Central Railway, against the Supervisor and Town Clerk of Ohio Grove Township, Mercer county, to compel the respondents to execute, issue and deliver to the relator, certain bonds of said township, agreeably to the terms of subscription to the capital stock of said railroad, made by said township. The respondents were served with the writ, but a return was made only by the supervisor, to which return, the relator filed a demurrer, and the cause was submitted upon the writ, the return of the supervisor and the demurrer thereto.

The opinion of the court contains a full statement of the grounds upon which it was based.

Messrs. Goudy & Chandler, for the relator.

Mr. B. C. Taliaferro, and Messrs. Blanchard & Silver, for the respondents.

Mr. Justice Walker delivered the opinion of the Court:

This was a relation by the American Central Railway, in the name of the people, against the Supervisor and Town Clerk of Ohio Grove Township, in Mercer county, and an alternative writ was prayed for and granted. The alternative writ was served. The town clerk makes no return to the writ,

and the supervisor has filed a return to which relators have demurred.

The alternative writ alleges that the relator was a corporation authorized by, and organized under, an act of the general assembly of this State, with power to construct and operate a railway in and through Mercer county in this State; that on the 21st day of February, 1859, the general assembly passed an act by which the several townships through which the road was or might be located, and the townships on each side of the railroad line, any portion of which might be within four miles of the road, might subscribe, in their corporate capacity, to the capital stock of the road, such amount each as they might severally determine, not exceeding sixty cents per acre on the land embraced in such township at the time of voting on the proposition to subscribe, and might issue their bonds for the amount thus subscribed, bearing interest at the rate of ten per cent. per annum, making the principal and interest payable at such time as the township might provide, but requiring the sanction of a majority of the votes cast at such election; that Ohio Grove Township, or a portion of it, is within four miles of the railroad, as the same was located and constructed, and is now being operated; that the requisite number of legal voters required the town clerk to call an election, for the determination of whether the township would subscribe the sum of seven thousand dollars to the capital stock of the road, the bonds to bear ten per cent. interest per annum, to be issued for one hundred dollars each, payable ten years after date, and to be delivered to the company when the iron should be laid on the track of the road from the town of Galva to Aledo, in this State, provided the iron should be laid by the 1st of July, 1869.

It is further alleged, that in accordance with the requirement, and under the act, the clerk called an election, which was held on the 23d day of June, 1868, on the terms specified in the requirement of the legal voters, which resulted in a majority in favor of subscription; that it thereby became the duty

of the supervisor of the township to make a subscription of seven thousand dollars to the capital stock of the road, and to execute in the corporate name of the township the bonds thereof in accordance with the terms of the subscription; that the company had complied with the terms and conditions named in the proposition, by laying the iron on the track of the road from Galva to Aledo within the time proposed; that Wm. M. Hays, who was then supervisor of the township, on the 4th day of July, 1868, made the subscription of seven thousand dollars to the capital stock of the road, which was accepted; that the railroad company, by its president, on the 21st day of April, 1869, made a written demand on the supervisor of Ohio Grove Township to issue the bonds; that the supervisor had neglected and refused to issue the same or any of them to the company.

The return states, that the election was not held in accordance with the provisions of the act authorizing the election; that the notices thereof were not legal and posted ten days before holding the same, nor were judges and clerks legally appointed to hold the same; that there was no registry of the legal voters, previous to the election, under the seventh section of the act of the 21st of February, 1859, nor was there any attempt to comply with that law; that the terms upon which the subscription was voted, required the bonds and interest to be paid at the end of ten years, while the company had demanded bonds payable in ten years with the interest payable annually; that Hays, at the time he is supposed to have made the subscription, was notoriously insane, and incapable of attending to or transacting business of any kind; that not more than two-thirds of the votes of the township were cast at the election, as appears by the vote at the previous general election; that respondent knows of no subscription having been made, nor had any been presented to him, nor do the books of the town show that any was ever made.

The demurrer questions the sufficiency of the return as a defense to the prayer of the information. The alternative writ stands for a declaration, and the return as a plea. Like other pleas, it must state facts positively and distinctly. The return should set out the facts fully, so as to enable the relator to traverse them. It is not sufficient to aver conclusions of law. If facts are not stated, or, if insufficiently stated, the plea will be held bad. Greater certainty is required in a return than in an ordinary plea in bar. Tapping on Mandamus, 352, 370; Moses on Mandamus, 210. In the case of *The Peopl* v. *Kilduff*, 15 Ill. 492, it was held that every intendment v be made against returns which do not answer impoi ts.

Th does not deny, and we must hold it to be true, that tion was held, judges and clerks appointed, and the m of the votes cast were in favor of subscription. It doe deny that the proper requisition for an election was n or that notices were given ten days before the electio t, however, avers, that the election was not called, held a nducted according to the requirements of the act of 185 this: that there were no legal notices posted for the ele ten days previous thereto, as required by the act, nor w judges and clerks legally appointed to hold the election. There is no effort to specify in what the notices lacked to conform to the legal requirement, or in what the appointment of such officers, violated the law or failed to conform to its requirements. From what is averred in reference to these acts, the facts are not stated so that the court can determine whether they are sufficient. In this the pleader has only averred his conclusion as to the illegality of the acts thus set up and relied upon to prevent the peremptory writ from issuing. The return should have specified the particular facts which rendered the notices illegal and the acts omitted in appointing the judges and clerks.

The return next avers, that there was no registry of the voters of the township prior to this election. This presents

the question, whether this is an election requiring such a registration. The first section of the act of Feb. 15, 1855, (Gross' Comp. 267,) requires the board of registry to meet on the Tuesday three weeks preceding any State, county, city or town election, (except town meetings in towns adopting the town-. ship organization law,) and proceed to make a list of the qualified electors of the town. In the case of *Boren* v. *Smith*, 47 Ill. 482, it was held, that an election on the question of changing a county seat, was not a State, county, city or town election, within the meaning of the registry law. This act was passed in 1855, and the amended charter of the company was adopted in 1859, four years afterwards.

The charter authorizes the election to be called on ten days notice, after a requisition is made by the proper number of voters. The registry law requires the board to meet three weeks before the election, and to make the registry and give notice and meet again one week before the election and revise the registry lists. The general assembly knew it would be impossible to do these things within ten days. When they authorized the election to be held ten days after the call, they knew that the board of registry could not meet three weeks before the election and after the call, and until the call was made, the board of registry could not know an election would be held. But it may be said the clerk might give notice for an election more than three weeks from the time it was called. He no doubt might do so, but the law has said he may fix a time but ten days distant, and he had the unquestioned right to do so under the statute; and having done so, it was impossible to make the registry. We must conclude that the legislature by adopting this law, which is repugnant to the registry act, intended to dispense with its provisions in holding this election.

It is urged, that, as the return alleges, "The subscription was not made on the 4th day of July, 1868, as stated in the petition, but a long time subsequent thereto, if at all ; that at the time the subscription was supposed to be made by Wm.

M. Hays, as is alleged in said petition, he was notoriously insane, and mentally incompetent to make said subscription, or, in fact, to transact any business of that magnitude, as supervisor of said township, or in any other capacity." It will be observed, that the averment is not that Hays was insane at the time he made the subscription, but at the time when it was supposed to have been made. This by no means asserts that he was insane when the subscription was made. Admit this to be true, and still it by no means appears that he was not entirely rational when it was made. The rules of pleading require that all averments shall be clear, distinct, positive and unambiguous, or they must be held defective. This averment does not conform to the requirement, and is therefore insufficient.

It is again objected, that the vote for subscription was to issue bonds payable in ten years, with interest, while the company had demanded bonds with the principal payable in ten years, and the interest annually. An inspection of the written demand shows that the demand was, that the bonds issue according to the subscription. The respondent seems to have misconstrued the terms of the demand, as the nature or character of the bonds is not specified.

The relators having shown that they are entitled to the relief sought, the peremptory writ of mandamus must be awarded.

*Mandamus awarded.*