## The Chicago and Alton Railroad Company

*v.*

## William B. Suffern *et al.*

*Filed at Ottawa June 15, 1889.*

1. Railroads — *permitting connections — constitutional requirement.* By section 5, article 13, of the constitution, it is made the legal duty of railroad companies to permit connections to be made with their tracks, so that any public warehouse, coal bank or coal yard may be reached by the cars on their roads. The command to allow such connection is imperative.

2. Same — *side-track connections — with coal mine — severing the connection — rights and remedy of owner.* Where a railway company has permitted the owner of a coal mine to build a side-track connecting its main track with the mine, and continues for years to furnish cars to haul coal from the mine over its line, such side-track must be considered as a part of its line; and if it disconnects such side-track, it may, by *mandamus,* be compelled to restore such connection.

3. In 1879 a railway company allowed the owners of a coal mine to build a switch from its main track to the mine, and to use the same for

eight years in shipping coal from their mine, when, without right or authority, it cut the switch loose from its track, so that its cars could not reach such mine, and thereby refused any longer to grant the permission required by the constitution : *Held,* that the company was guilty of the violation of a public duty, and that *mandamus* would lie to compel it to restore such connections with the switch, and to furnish cars on the switch for the shipping of coal from the mine, the same as before the severance.

4. In such case it may be that the railway company was originally vested with such discretionary power as to authorize it to direct in what particular manner the connection should be made with its main track ; but the discretion of the company in this respect was exhausted after the completion of the switch, and its use, without objection, for a number of years.

5. When the constitution enjoins it as a duty upon a railroad company to permit a connection between its tracks and any coal mine, the right is impliedly conferred upon the owner of such coal mine to call upon the company to grant such permission, and to continue it when once granted.

6. SAME—*connections with coal mines—in the case of several railroads.* Where there are several railroads passing near a coal mine, the same constitutional obligation rests upon all of them to permit connections with their several tracks. Under such circumstances, a common track to be used by all the roads for receiving coal into their cars becomes a necessity, and the owner of the mine will not be compelled to have a separate coal chute or a separate entrance to his mine for the switch of each railroad company.

7. A railway company allowed the owners of a coal mine to connect their mine with its track by means of a switch, a part of which was on the company's right of way and a part on the land of the owners of the mine. After some years the mine owners allowed another railway company to connect a switch from its tracks with the mine, using a small part of the other switch, so that the only point where the two switches were joined was in the track upon the weighing scales near the coal bank, under the coal chute. The cars were shoved upon and off the scales from and to the respective switches by hand, only : *Held,* that such a joint use of the common track upon the weighing scales, for the purpose of loading cars and pushing them upon the several switches, could not injure the first named railway company, or justify it in severing the connection with its track.

8. In such case, the fact the second railway company might shove its cars upon the first company's track, or that the manager of the first company thought the joint use of the switch at the weighing scales would be unsafe, would not justify the latter company in disconnecting

the switch from its main tracks, and in refusing to furnish cars at the coal mine. If such joint use is unsafe, the facts making it unsafe should be averred in the pleading attempting to justify the severance.

9. SAME—*improper use of switch connection—remedy.* Should a mine owner make an improper use of a switch or side-track to its mine, so as to injure in any way the railway company allowing the connection, the courts will furnish the company a remedy for the wrong. But this will not author'ze the company to take the law into its own hands, and refuse to do what the constitution requires it to do,—or, in other words, to cut off the connections of such switch with its tracks.

10. SAME—*discrimination—as between individuals—duty to afford facilities to all.* A railway company can not lawfully make any injurious or arbitrary discrimination between individuals in its dealings with the public. As railway companies must deliver grain to all elevators upon the lines of their roads, or connected therewith by side-tracks, so, also, must they receive shipments of coal from all coal mines on the lines of their road, or connected therewith by side-tracks.

11. So a railroad company will not be justified in refusing to permit the owners of a coal mine to ship coal over its road merely because such owners also ship coal from the same mine over the road of another company. A railroad company has no right to refuse to carry freight unless it has a monopoly. It is for the interest of the public that there shall be full and fair competition between railroad companies operating in this State.

12. MANDAMUS—*at whose instance.* A private person may apply for a *mandamus* to enforce a public duty not due to the government as such, without the intervention of the government law officer.

13. SAME—*prerequisites.* To entitle a party to the writ of *mandamus,* the party applying for it must show a clear legal right to have the thing which is asked for, done, and it must be the clear legal duty of the party sought to be coerced, to do the thing he is called upon to do.

14. SAME—*pleading and practice.* Under our present practice, the answer or plea to the petition for *mandamus* takes the place of the return to the alternative writ under the former practice. The respondent must deny the facts alleged in the petition on which the claim of the relator is founded, or set up other facts sufficient, in law, to defeat such claim, stating these facts positively and distinctly. All the material facts alleged in the petition, not denied by the pleadings of the respondent, must be taken as true.

WRIT OF ERROR to the Appellate Court for the First District; —heard in that court on appeal from the Circuit Court of Cook county; the Hon. RICHARD S. TUTHILL, Judge, presiding.

Mr. WILLIAM BROWN, for the plaintiff in error:

The managing officer having determined that the joint use of the switch was unsafe to passengers, employes and property, it was the duty of plaintiff in error to immediately avoid the danger by severing the connection with its tracks.

The performance of specific acts will be compelled by *mandamus* only when the duty to discharge them is clear and well-defined,—when no element of discretion is involved. *People* v. *Dulaney*, 96 Ill. 503; *State* v. *Turnpike Co.* 16 Ohio St. 308; High on Ex. Legal Rem. secs. 25, 321; *State* v. *Howard County Court*, 39 Mo. 375.

The principle is well established, that where it is sought by *mandamus* to coerce the performance of a particular act, the party applying must show, not only the clear legal right to have the thing done, but he must show affirmatively that the corporation has the power, and that it is its duty, to do the act in the manner sought. Tappan on Mandamus, 11; *People* v. *Hatch*, 33 Ill. 69; *Village of Hyde Park* v. *Thatcher*, 13 Braw. 613; *Commissioners* v. *People*, 66 Ill. 339.

Where the duty is not specific, but general, and its performance as such involves the exercise of judgment and discretion, the writ will not lie. This is elementary law. *Commissioners* v. *People*, 19 Bradw. 253; Tappan on Mandamus, 64, 282; *St. Clair County* v. *People*, 85 Ill. 396; *School Inspectors* v. *People*, 20 id. 525; *Hildrath* v. *Heath*, 1 Bradw. 83; *Kelly* v. *Chicago*, 62 Ill. 279; *People* v. *Williams*, 55 id. 178; High on Ex. Legal Rem. sec. 124; *Swann* v. *Gray*, 44 Miss. 392; *Mayor* v. *Rainwater*, 47 id. 547; *People* v. *Metzger*, 47 Cal. 524; *People* v. *Board of Supervisors*, 84 Ill. 303; *Decatur* v. *Paulding*, 14 Pet. 499; *United States* v. *Guthrie*, 17 How. 284; *United States* v. *Commonwealth*, 5 Wall. 563; *Litchfield* v. *Register*, 9 id. 569; *United States* v. *Lamar*, 116 U. S. 423.

The construction and maintenance of switches and the place of location are necessarily left to the sound discretion of the

company. 1 Rohrer on Railroads, 490; *Railroad Co.* v. *Speers*, 36 Pa. St. 325.

Mr. John M. Hamilton, and Mr. Charles C. Gilbert, Jr., for the defendants in error:

The constitution and statute give no discretion as to the allowing of connections. That is a clear legal duty, enforceable by *mandamus*. *Vincent* v. *Railroad Co.* 49 Ill. 33; *People* v. *Railroad Co.* 55 id. 95; *Railway Co.* v. *People*, 56 id. 367; *Hoyt* v. *Railroad Co.* 93 id. 609; *People* v. *Railroad Co.* 28 Hun, 549; *Abbott* v. *Railroad Co.* 80 N. Y. 31; *State* v. *Railroad Co.* 29 Conn. 538.

Freight must be received by a railroad company according to its usage. 68 Am. Dec. 875.

By its own voluntary act the company established relator's coal shaft upon the side-track, at a "place" where it could receive coal, to be transported as freight. (Rev. Stat. chap. 114, sec. 22.) The company is bound to receive coal as freight there, and restore the connection of this track, and furnish cars thereon. When the remedy relates to a private right, the person interested in having the right enforced must become the relator. 11 Ill. 202.

The relator's right to the writ must clearly appear. 86 Ill. 613.

The writ lies to compel a common carrier to deliver grain at any elevator on its line. *Railway Co.* v. *People*, 56 Ill. 365.

The writ has been granted to compel a railroad company to build a bridge. (*Railroad Co.* v. *Railroad Co.* 7 Md. 70.) To re-instate its road after the rails have been taken up. (*Rex* v. *Railroad Co.* 2 B. & A. 646.) To receive merchandise for shipment. (*Ex parte Robins*, 7 D. & P. C. 566; 2 Shelford on Railways, 848.) To restore an abandoned station. (*State* v. *Railroad Co.* 37 Conn. 165.) To furnish and maintain stations for passengers and freight at all proper points on its line. *State* v. *Railroad Co.* 17 Neb. 647; *Munn* v. *Illi-*

*nois,* 94 U. S. 113; *State* v. *Telegraph Co.* 17 Neb. 126; *Messenger* v. *Railroad Co.* 36 N. J. 407.

Duties and obligations imposed by statute are always enforced by *mandamus,* unless some other mode is prescribed by statute, (2 Redfield on Railways, 276, 277,) and, in a word, to do whatever is required by law.  1 Redfield on Railways, 278, 279; 6 Bacon's Abridgment, 428.

The law orders these parties to perform the duty if they build the road.  *Regina* v. *Trustees,* 1 Q. B. 680.

When a person desires to be placed in the possession of a right illegally and unjustly withheld from him, and not damages for the injury done him, the writ of *mandamus* is a proper remedy to give the thing itself, the withholding of which constitutes the injury complained of.  *Railroad Co.* v. *Wisdom,* 5 Heisk. 125; Moses on Mandamus, 14.

Private persons may, without the intervention of the government law officers, move for a *mandamus* to enforce a public duty not due the government as such.  This is true in all cases where the defendant owes a duty in the performance of which the prosecutor has a peculiar interest.  *Railroad Co.* v. *Hall,* 91 U. S. 343; *Regina* v. *Railroad Co.* 2 B. & A. 646.

The writ should be to re-instate and lay down again.  *Regina* v. *Railroad Co.* 2 B. & A. 652.

To authorize the issuing of a writ, it is not necessary to show a positive refusal.  It is sufficient to show a manifest intention not to perform.  33 N. J. 110.

It is no sufficient excuse to say that respondent's road is no longer necessary for the shipment of complainant's coal. Redfield on Law of Railways, 648; *Railroad Co.* v. *Hoyt,* 1 Bradw. 385.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

This is a petition for a mandamus, filed by Suffern Bros., the defendants in error, against the Chicago and Alton Railroad Company, the plaintiff in error, to compel the Company

to restore a switch or side-track connection between its main track and the coal mine of Suffern Bros., and to furnish cars for the transportation of coal from the mine. The Circuit Court awarded the writ, and its judgment has been affirmed by the Appellate Court, from which the case is brought here by writ of error.

The coal mine is situated a short distance west of the right. of way of the company, which, at this point, is one hundred feet wide and runs from the northeast to the southwest. The side track was built in 1879 under a contract then made between the company and Suffern Bros. The cost of it was paid by Suffern Bros. at the rate of $1.00 per foot, amounting to $793.00. It was constructed with the consent of the company and under the supervision of the company's servants. It is, partly upon the railroad right of way and partly upon the land of the defendants in error. It starts from the main track at a point northeast of the coal mine, and connects again with the track at a point southwest of the mine, diverging to the westward in its course between these two points, so as to pass over the land of the relators near the coal bank and under the coal chute attached to their mine. The plaintiff in error furnished them with cars and hauled coal for them from their coal shaft over this switch to various places on the main line,. to which shipments were made, for eight years from 1880 to 1887 inclusive.

On September 10, 1887, plaintiff in error, the respondent in the court below, severed the connection between the switch and the main track by taking out the frogs and connections. at both ends of the side track, and has ever since refused to restore such connection, or to furnish cars, although called upon by the relators to do so.

Section 5 of article 13 of the constitution of this State provides as follows: "and all railroad companies *shall permit* connections to be made with their track, so that any such consignee (of grain) and any public warehouse, coal bank or

coal yard, may be reached by the cars on said railroad." If the respondent had no right or authority to remove the connection, it can be compelled by mandamus to restore it under the constitutional provision thus quoted.

Two rules in regard to the issuance of a writ of mandamus are well settled by all the authorities upon the subject. First, the party applying for it must show a clear legal right to have the thing, which is asked for, done. Second, it must be the clear legal duty of the party, sought to be coerced, to do the thing he is called upon to do. (*Commissioners, etc.* v. *The People ex rel.* 66 Ill. 339; *The People* v. *C. & A. R. R. Co.* 55 id. 95.)

The constitution says, that the respondent "*shall permit*" its track to be connected with the coal bank, so that the latter may be reached by the cars on its road. The command to it to permit such connection is absolute and imperative. Its legal duty in the premises is so plain that it cannot be questioned. In 1879 and for eight years thereafter it performed its duty by allowing the switch to be connected with its main track, and to be used by the relators in shipping coal from their mine. If in 1887 it cut the switch loose from its track without right or authority, it thereby refused any longer to grant a permission which the constitution commanded it to grant, and was guilty of the violation of a public duty which the organic law of the State expressly imposed upon it. That mandamus will lie in such a case, there can be no question.

When the side track was first laid, the respondent may have had the right to say how it should be laid. It may have then been vested with such discretionary power, as that it was authorized to direct in what particular manner the connection should be made with its main track. But its discretion in this regard was exhausted after the completion of the switch, and its use without objection for a number of years. In the late case of *The People ex rel.* v. *L. & N. R. R. Co.* 120 Ill. 48, we awarded a mandamus to compel a railroad company to

stop its trains at a depot in McLeansboro. It was there held, that the fixing of the terminal point of its road in a town or city was within the discretion of the railway company, but that the location when once fixed could not afterwards be changed by the company, and that its discretion in the matter had been fully and finally exercised when it erected a depot in the town, built tracks to it and stopped its trains there for nearly thirteen years.

The legal right of the relators to have the connection of the switch restored, if it was wrongfully removed, follows as a necessary corollary from the legal obligation of the respondent to make such restoration. When the constitution enjoins it as a duty upon the railroad company to permit a connection between its track and any coal mine, it impliedly confers upon the owner of such coal mine the right to call upon the company to grant such permission, and to continue it when once granted. The doctrine in this country is, that a private person may apply for a mandamus to enforce a public duty, not due to the government as such, without the intervention of the government law officer. (*The County of Pike* v. *The People*, 11 Ill. 202; *City of Ottawa* v. *The People*, 48 id. 233; *Union Pacific R. R. Co.* v. *Hall et al.* 91 U. S. 343).

The question next to be considered is, by what right or authority respondent has assumed to disconnect from its track the switch running to the mine of the relators, and to deprive them thereby of all facilities for shipping coal in its cars and over its road.

The Chicago, Santa Fe and California R. R. Co. runs west of the coal mine, and its right of way is nearly parallel with that of plaintiff in error. About September 1, 1887, the Santa Fe R. R. Co. constructed a switch from its main track to the mine of the relators, and received some shipments of coal over its line from the coal mine by means of such switch. This new connection between the mine and the Santa Fe road has given rise to all the trouble between the relators and the respondent.

The pleadings are voluminous and complicated. The respondent answered the petition. The relators filed replications to the answer. The respondent filed two rejoinders to the replications. The relators demurred to the rejoinders. The trial court sustained the demurrer, and the plaintiff in error electing to stand by its rejoinders, a judgment was rendered awarding the writ. We do not deem it necessary to pass upon the various objections made by each party to the pleadings of the other, or to determine the comparative merits of the pleadings upon both sides. It will be sufficient to refer to such statements therein as we consider material to the decision of the case.

The relators aver, that the Santa Fe switch does not cross or interfere with the main track of the respondent, or with the switch built from respondent's track to the mine, except that, in connecting with both roads, empty coal cars from the separate switch of each railroad are pushed by hand by the servants of relators upon the track on the weighing scales near the coal bank under the coal chute attached to the mine, and, after being loaded and weighed, are pushed off said scales by hand, and delivered upon the separate switches of the two railroads away from and without any interference with each other; and relators further aver that this was the practice when respondent's switch was the only one connected with the mine, and that neither company runs, or is permitted to run, its engines or cars over said scales, or over the switch of the other company, but that the cars at that point are and always have been handled by hand.

The respondent avers, that the relators permitted the Santa Fe company, without the consent of respondent, to connect with and jointly use, *upon the property of the relators*, the switch built from respondent's road, whereby the Santa Fe company "would be enabled to transfer its cars over the said switch to and upon the main tracks of defendant," and that, in the judgment of respondent's general manager, such joint use would

not be safe or prudent, "wherefore defendant did remove the frogs," etc.

The respondent admits in its pleadings, that the only point where the two switches connect is upon the land of the relators, and not upon its own right of way. Under our practice, the answer or plea to the petition for mandamus takes the place of the return to the alternative writ. The respondent must deny the facts alleged in the petition, on which the claim of the relator is founded, or set up other facts sufficient in law to defeat such claim, stating these facts positively and distinctly. (Moses on Mandamus, page 210). Every intendment is made against returns which do not answer the important facts. (*The People ex rel. Brewster et al.* v. *Kilduff*, 15 Ill. 492; *The People ex rel.* v. *Ohio Grove Town*, 51 id. 191). Nowhere in its pleadings does the respondent deny, that the only point, where the two switches were joined, was in the track upon the weighing scales near the coal bank under the coal chute, or that cars were shoved upon and off the scales from and to the respective switches by hand, and not otherwise. These allegations in the pleadings of the relators must, therefore, be assumed to be true. It is difficult to understand how such a joint use, as is here described, of a common track upon the weighing scales of the relators for the purpose of loading cars with coal, and then pushing them by hand upon the respective switches of the two roads, could in any way injure the plaintiff in error, or justify its severance of the connection with its track.

There was no danger to the servants or property of the respondent. The cars were shoved upon and from the scales by the servants of the relators. It is not sufficient to aver that the Santa Fe cars *might be* shoved upon respondent's track. It is not alleged that any Santa Fe cars were ever pushed upon its main track, or upon its right of way, or upon the Switch leading to its track except at the common point of juncture above indicated.

Counsel for plaintiff in error says, that its manager, in the exercise of his discretion, determined that such joint use and occupation, as are above mentioned, were unsafe and imprudent, and for that reason that it had a right to disconnect the side track, and that it cannot be compelled by mandamus to do what depends upon the exercise of discretion. It is necessary to go further than to state that the manager *thought* the joint use to be unsafe. Facts must be set up showing wherein such use was unsafe. No such facts are averred. What the plaintiff in error is called upon to do is to permit a connection between its track and the coal mine. It has no discretion in the performance of this duty. By the command of the constitution it must permit the connection. If the owner of the mine makes an improper use of the switch or sidetrack, so as to injure plaintiff in error in any way, the courts will furnish it a remedy for the wrong suffered. But it has no right to take the law into its own hands and refuse to do what the constitution requires it to do.

The Santa Fe Railroad Company is also obliged to permit its track to be connected with the mine of the relators. If there were several other railroads passing near the mine, the same constitutional obligation would rest upon each. Under such circumstances, a common track to be used by all the roads for receiving coal into their cars would become a necessity. The owner of the mine would not be compelled to have a separate coal chute, or a separate entrance to his mine for the switch of each railroad company. We have held in a number of cases, that a railroad company is bound to deliver grain at any elevator or warehouse, to which such grain may be consigned, along the line of its road or connected with its main track by a side track, which it had permitted to be laid down. (*Vincent et al.* v. *C. & A. R. R. Co.* 49 Ill. 33; *People* v. *C. & A. R. R. Co.* 55 id. 95; *C. & N. W. R. R. Co.* v. *People,* 56 id. 365; *Hoyt* v. *C. B. & Q. R. R. Co.* 93 id. 601). Switches, branching off from the main tracks of a number of roads, fre-

quently connect with one or two tracks under the archway of an elevator, where grain is loaded into or unloaded from the cars of all the roads. Such common tracks are used by all the companies delivering or receiving grain at the elevator. Would one of these companies be justified in disconnecting the switch running from its track, because the owner of the elevator permitted some other company to use the common track under the archway?

As plaintiff in error permitted the side track to be built connecting its main track with the mine, and has continued for years to furnish cars to haul coal from the mine over its line, such side track must be considered as a part of its line, (*Vincent* v. *C. & A. R. R. Co. supra*), and it has been held that a railroad company can be compelled by mandamus to operate its road as a continuous line, and to replace a part of its track which it has wrongfully taken up. (*O. & M. Ry. Co.* v. *The People ex rel.* 120 Ill. 200, and cases there cited).

The petition in this case avers, that respondent informed the relators, that it severed the connection because relators had made use of the Santa Fe switch for the shipment of their coal, and that respondent notified the relators, that it would refuse to receive coal from their mine for shipment if relators continued to avail themselves of the facilities of the Santa Fe road for the transportation of coal. This averment is not specifically traversed in the answer. Tapping, in his work on Mandamus, (marg. pge. 349), says: "every distinct and material allegation, contained in the writ, must, if it be intended to contradict them, be traversed.  *  *  *  Such of the material suggestions and allegations of the writ, which are not denied or traversed by the return, are, in contemplation of law, admitted by the defendant to be true."

Even if it can be truthfully said, that there are general words of denial in the answer which are sufficient to negative the last mentioned averment, it otherwise appears from the pleadings, that such averment suggests the true reason for the

severance of the side track. The respondent alleges in its answer, that the relators can take all the coal from their mine by means of the Santa Fe switch, and that, since they have acquired the means of shipping coal over the Santa Fe road, they have abandoned the shipment of coal upon respondent's line. The fact, that the relators had acquired the means of shipping coal over the Santa Fe road by means of a new switch connection therewith, is thus admitted by the answer to be the cause of the alleged abandonment of shipments over the respondent's road. But it clearly appears that the abandonment of such shipments was not voluntary but forced. Respondent compelled the relators to abandon its line because it took up the frogs and disconnected the sidetrack. The allegations in the pleadings of the relators, that, when the switch was severed, they were shipping about 125 car loads of coal per month over the Chicago & Alton road, and had contracts at that time for the delivery of coal to persons along the line of that road, and were unable to comply with their contracts by reason of such severance, and up to that time had only shipped three car loads of coal over the Santa Fe road, and were only obliged to abandon their shipments over respondent's road because of the respondent's act in severing the side track from the main track, are nowhere traversed either by a general or special denial.

It follows that, according to the respondent's own averments, it removed the connection with the mine of the relators, because the relators chose to make some shipments of coal over the Santa Fe line. In this view the conduct of the plaintiff in error is wholly inexcusable.

One railroad company is not justified in refusing to permit the owners of a coal mine to ship coal over its road, because such owners also ship coal from the same mine over the road of another railroad company. It is the duty of a railroad company to carry any freight that is offered provided its legal charges for such carriage are paid. It cannot take the posi-

tion, that it will not carry coal from a mine upon the line of its road unless it is allowed to carry all the coal from such mine. It is for the interest of the public that there should be full and fair competition between the different railroad companies operating their lines in the State. Serious injury will result to the business interests of the country, if shippers can be compelled by arbitrary measures to patronize one railroad to the exclusion of all others. No monopolies would be more odious than those which would result from the adoption of such a policy.

It is admitted that a side track connects the main track of plaintiff in error with the coal mine of the Streator and Wilmington Star Coal Company, which is situated a short distance north west of the mine of the defendants in error, and that plaintiff in error furnishes cars to said Star Coal Company and hauls coal for it from its mine. Thus one coal mine is aided in the prosecution of its business, while another is forced to suffer loss for want of the necessary means of transportation.

In *Vincent* v. *C. & A. R. R. Co. supra,* and *Chi. & N. W. Rlw'y Co.* v. *The People, supra,* certain railroad companies claimed the right to deliver all the grain transported over their lines to particular elevators in the city of Chicago which they favored, and to refuse to deliver any grain to other elevators which they did not favor. In the *Vincent* case we said: The "evident object (of the Legislature) was to prevent the growth of those injurious monopolies in the grain trade, which would almost necessarily spring from the toleration of such a practice as that which these appellants seek to enjoin. To do this, it was necessary to secure to every warehouseman, whose warehouse was connected by a side track with a railway, the right to a delivery of all grain consigned to him. * * * It (the railroad company) must deal fairly by the public, and this it would not be doing if allowed so to discriminate as to build up the business of one person to the injury of another in the same trade."

In the *Chi. & N. W. Rlw'y* case, after stating, that contracts with railroad companies to deliver all the grain hauled by them to particular warehouses, or all the lumber hauled by them to particular lumber yards, etc., would enable such companies to "subject the business of the State almost wholly to their control, as a means of their own emolument," we said: "How injurious to the public would be the creation of such a system of organized monopolies in the most important articles of commerce, claiming existence under a perpetual charter from the State, and, by the sacredness of such charter, claiming also to set the legislative will itself at defiance, it is hardly worth while to speculate. It would be difficult to exaggerate the evil of which such a system would be the cause, when fully developed, and managed by unscrupulous hands. * * * The principle that a railroad company can make no injurious or arbitrary discrimination between individuals in its dealings with the public, not only commends itself to our reason and sense of justice, but is sustained by adjudged cases."

The language thus quoted applies to the case in hand. It was the evident design of the constitutional provision above quoted to compel the railroads to furnish the coal mines in the State with all necessary facilities for the shipment and transportation of coal. As the railroad companies must deliver grain to all elevators upon the lines of their roads, or connected therewith by side tracks, so also must they receive shipments of coal from all coal mines on the lines of their roads or connected therewith by side tracks.

The mandamus was properly issued. The judgment of the Appellate Court is affirmed.          *Judgment affirmed.*

Mr. Justice Craig, dissenting:

As I do not agree with the majority of the court in the decision of this case, I have thought it proper to state my views.

This was a petition for *mandamus*, brought by defendants in error, who operate a coal mine in Grundy county, to compel

19—129 Ill.

the Chicago and Alton Railroad Company to restore a certain switch connection between its main track and the coal shaft of defendants in error, and also to compel the railroad company to furnish cars on the switch for the use of defendants in error in the shipment of their coal. No evidence was introduced in this case. All the questions involved arise on the pleadings. It appears from the pleadings, that the side-track or switch was constructed in 1879 by the railroad company, from its main track to the coal mine of defendants in error, partly on the right of way of the company, and partly on land of defendants in error which joins the right of way. Defendants in error paid, on account of the construction of the switch, $793. From the time the switch was constructed until the month of September, 1887, the switch was used solely by the railroad company, the company placing empty cars upon it, which defendants in error would fill with coal, and then the company would transport the coal over its line of road to its proper destination. In September, 1887, the Chicago, Santa Fe and California Railroad Company, at the *instance* and *request* of *defendants in error,* built a side-track from its main line into this switch, which, of course, gave it the joint use of the switch which the Alton road had constructed. When the Alton railroad company learned the fact, it removed the frogs which connected the main track with the switch, and thus the connection between the main line and coal mine was broken, and this action was brought to restore the connection, as stated before.

The railroad company put in an answer to the petition, in which some of the facts alleged were admitted and others denied. Among other things, the answer contained the following: "Respondent admits that about the first of September the Chicago, Santa Fe and California Railroad Company constructed a switch to said coal mine, and respondent avers that it did so by the procurement and consent of petitioners, and petitioners, without the knowledge and consent of respondent,

connected said switch of said Chicago, Santa Fe and California Railroad Company with the switch leading to the main track of this respondent, so as that the cars of the said Chicago, Santa Fe and California Railroad Company might be pushed onto the right of way and main track of respondent, without its knowledge or consent, and respondent thereupon declined to permit such connection with its main track to remain, and in the exercise of its judgment and discretion as to the safety and good policy of such connection, determined that it was unwise, unsafe and improper for it longer to permit the switch, so out of its control, to connect with its main track, and believing that such connection might in some way become dangerous to the lives and limbs of its passengers and employes, and dangerous to its property, it did disconnect its main track from such side-track by the removal of the frogs on its right of way, as was its duty and right to do."

To the answer the petitioner filed seven replications. No. 6 contains the following: "Defendants ought not to be precluded by reason of the allegation in said answer contained, that about the first of September, 1887, the Chicago, Santa Fe and California Railroad Company constructed a switch to said coal mine, and that it did so by and with the procurement and consent of petitioners, and that petitioners, without the knowledge and consent of defendant, connected said switch of the Chicago, Santa Fe and California Railroad Company with the switch leading to the main track of defendant, without its knowledge or consent, and the defendant thereupon declined to permit such connection with its main track, and, in the exercise of its judgment as to the safety and good policy of such connection, it determined that it was unwise, unsafe and improper for it longer to permit the switch, so out of its control, to connect with its main track, etc., because they say they have the constitutional right to have their said coal bank connected with both of said railroads, so that it can be reached by cars thereon; and that in making such connection the

switches of defendant's road do not in anywise connect or interfere with each other, except that it is so arranged that empty coal cars from the separate switch of each railroad may be and are pushed by hand by petitioners, their agents and servants, upon the track on the weighing scales, near petitioners' coal bank, under the coal chute attached to said mine, and are loaded and weighed by petitioners, and are by hand pushed off said scales and delivered upon the separate switches of said two railroads, away from and without any interference with each other; and the manner of loading and delivering said cars, with both the railroads, as aforesaid, is the same in practice as it has always been, when the switch of the defendant was alone connected with petitioners' mine." To the replications the defendant filed two rejoinders, to which petitioners demurred. The court sustained the demurrer, and as the defendant elected to abide by the rejoinders, judgment was entered as prayed for in the petition.

It is first claimed, that the rejoinders were good, and that the court erred in sustaining the demurrer to them. It is also insisted, that if the rejoinders were not good, then the demurrer ought to have been carried back and sustained to the replications. It will therefore be necessary to consider the replications, but in the view I take of the record, it will only be necessary to consider replication No. 6, as the real point in controversy arises under the facts alleged therein.

The last clause of section 5, of article 13, of the constitution of the State of Illinois (1870), provides as follows: "And all railroad companies shall permit connections to be made with their track, so that any such consignee, and any public warehouse, coal bank or coal yard, may be reached by the cars on said railroad." Paragraph 84, section 22, chapter 114, of Starr & Curtis' Statutes, provides: "Every railroad corporation in the State shall furnish, start and run cars for the transportation of such passengers and property as shall, within a reasonable time previous thereto, be ready or be offered for

transportation at the several stations on its railroad, and at the junctions of other railroads, and at such stopping places as may be established for receiving and discharging way passengers and freights; and shall take, receive, transport and discharge such passengers and property at, from and to such stations, junctions and 'places,' on and from all trains advertised to stop at the same for passengers and freight, respectively, upon due payment or tender of payment of tolls, freight or fare legally authorized therefor, if payment shall be demanded," etc. Defendants in error, in the argument, predicate their right to relief on the above provisions of the constitution and statute.

I think it is plain, from the language of the constitution, that a railroad company may be required by the owner of a coal mine to permit a connection with its track, by switch or side-track, at a proper place, in order that the mine may be reached by rail and the coal may be transported by car. Indeed, the original arrangement, set out in the pleadings, under which the side-track was constructed and the connection with the main track made, and under which the side-track was operated for eight years by the constant delivery of cars and shipment of coal, was but a compliance on the part of the defendant with the mandate of the constitution. But the question here involved is not whether defendants in error, who own a mine adjacent to the track of the railroad company, have the right to require the company to permit a connection between the coal mine and the railroad track, by a side-track or switch. That right, in the argument, as I understand it, is not disputed; but the question here is, whether the company may be required to restore a switch connection which will confer the power on another railroad company to not only use the switch of the defendant, but will also enable the other company to run its cars, if it saw proper, on the main track of the defendant. When this switch or side-track was constructed by the Chicago and Alton Railroad Company, no other company

had any connection with it. Thus matters remained until September, 1887, when, without the knowledge or consent of the defendant, defendants in error procured the Santa Fe railroad company to connect a switch it had constructed to the mine, with the switch of defendant, and now defendants in error claim that the defendant should be compelled to restore a switch connection which will, in effect, allow the Santa Fe railroad company to use defendant's tracks without its consent, and without making any compensation for the right.

Section 20, of chapter 114, of the Revised Statutes of 1874, authorizes a railroad company organized under the act, "to cross, intersect, join and unite its railway with any other railway before constructed, at any point on its route, and upon the grounds of such other railway company, with the necessary turn-outs, sidings and switches, and other conveniences in furtherance of the objects of its connections." Under this section it may be conceded that the Santa Fe railroad company might join or intersect defendant's side-track if the public necessity required it to do so. But this could not be done without making compensation, as the act expressly provides, if the two corporations can not agree upon the amount of compensation to be made, or the points and manner of such crossing and connection, the same shall be ascertained and determined in the manner prescribed by law. Has the Santa Fe railroad company the right to intersect the track of defendant, and thus acquire the right to use its side-track or switches, without making compensation? The statute declares otherwise; and yet, if defendants in error can compel the respondent to restore the connection, which they are seeking to do, the Santa Fe railroad company will be at liberty to use defendant's tracks without making compensation, in direct violation of the statute. It may be true, as set up in relators' sixth replication, that they have the constitutional right to have their coal bank connected with both railroads; but the two railroad companies are under no obligation to use the same switch or side-track

in connecting their respective roads with the mine, and the relators have no constitutional or other power to compel the defendant corporation to consent to the use of its side-track by another railroad company until such company has obtained the right in the mode prescribed by law. I do not think the facts set up in the sixth replication were a defense to the matters alleged in the defendant's answer, and the demurrer interposed to the rejoinders ought to have been carried back to the sixth replication.

As to the right of relators to have a switch connection connecting their coal mine with the railroad track of the defendant, and as to their right to be supplied with cars to transport their coal, I entertain no doubt whatever, and in a proper case they would be entitled to a *mandamus;* but as I understand this record, it is not a controversy between the relators and the defendant, the Chicago and Alton Railroad Company, but the real controversy is between the two railroad companies, and the effect of granting relief to relators will be to allow the Santa Fe railroad company to use the switch of the Alton road without paying for such use. As said before, the relators procured the Santa Fe company to connect its track with the switch of the Alton company. This they had no right to do until compensation was made for the right, and, in my judgment, before the defendant should be compelled to restore the switch connection, relators should be required to disconnect the Santa Fe switch from defendant's switch, and leave the two companies to adjust their rights as provided by law, before the one shall connect with the other.

Shope, C. J., and Wilkin, J., also dissenting.