GEORGE B. SWIFT, Mayor,

*v.*

F. W. KLEIN.

*Filed at Ottawa November 9, 1896.*

1. MUNICIPAL CORPORATIONS—*annexation, as affecting liquor ordinance—power of legislature.* The legislature has power to enact that ordinances relating to the sale of intoxicating liquor in force in a municipality annexed to another city shall continue in full force and effect, unless repealed.

2. SAME—*when ordinances of annexed village become binding on city—dram-shops.* Ordinances of a village annexed to a city, in relation to dram-shop licenses, are made binding upon the city by a statutory provision that they shall continue in full force unless repealed, supplemented by an ordinance of the city providing that no licenses shall be issued except upon the terms of such village ordinances.

3. MANDAMUS—*what petitioner must show on application to compel issuance of dram-shop license.* Mandamus will not lie to compel the granting of a dram-shop license, where the petitioner does not show that he did not keep or was not interested in any other saloon or dram-shop, and the ordinance under which license is asked provides that the licensee shall not keep or be interested in any saloon or dram-shop at more than one place.

APPEAL from the Superior Court of Cook county; the Hon. JAMES GOGGIN, Judge, presiding.

A petition for *mandamus* in this case was filed by appellee in the Superior Court of Cook county to compel the issuing to him of a dram-shop license to keep a saloon at 5014 Cottage Grove avenue, in that part of the city of Chicago known as Hyde Park. This portion of the city,

previous to 1889, was a separate municipality, and was governed by a president and board of trustees. It had certain ordinances relating to the issuing of dram-shop licenses, among which was the following: "The president and board of trustees, by resolution, may grant licenses to keep so many dram-shops, saloons or beer wagons in the village of Hyde Park outside of prohibited districts as they may think the public good requires," and "the licensee shall not keep nor in any way be interested in any saloon or dram-shop at more than one place at the same time."

In 1889 the village of Hyde Park was annexed to the city of Chicago. There was in force at that time section 18 of "An act to provide for the annexation of cities, incorporated towns and villages," being section 228, chapter 24, of Hurd's Statutes, which provides as follows: "When a part or the whole of an incorporated town, village or city is annexed, under the provisions of this act, to another city, village or incorporated town, and prior to such annexation an ordinance was in force prohibiting the issuing of licenses to keep dram-shops within said territory so annexed, or any part thereof, or providing that such licenses shall not be issued except upon petition of a majority of the voters residing within a certain distance of such proposed dram-shops, then such ordinance shall continue in full force and effect, notwithstanding such annexation.   *   *   *   It is intended by this section to continue in full force and effect all ordinances of any municipality the whole or part of which is annexed to another city, incorporated town or village, whereby the licensing of dram-shops is prohibited or regulated within said city."

The city of Chicago, recognizing the force of this provision and in contemplation of the proposed annexation of the village of Hyde Park, through its legislative body, on the 17th of June, 1889, passed the following ordinance: "That when any territory has heretofore or shall here-

after be annexed to the city of Chicago, and within such territory so annexed, or any part thereof, the issuing of dram-shop licenses was prohibited or regulated by ordinances of the city, village or incorporated town of which such territory was before such annexation a part, then in such case no licenses shall be issued by the mayor to keep a dram-shop within any portion of the territory so annexed wherein the issuing of dram-shop licenses was prohibited before such annexation by the corporate authorities of the municipality of which it was formerly a part, or if within any such territory so annexed licenses to keep dram-shops were prohibited unless a petition therefor was filed and signed by a majority of the legal voters residing within one-half mile of the proposed location, then in such case the mayor shall not issue a license to keep a dram-shop within such territory unless a petition shall be filed with him signed by a majority of the legal voters residing within one-half mile of the location of the proposed dram-shop." The ordinance in respect to the licensing of saloons in Hyde Park also, among other things, required that the application for a license "shall be signed by a majority of the property owners according to the frontage on both sides of the street in the block in which such dram-shop is to be kept, and shall also be signed by a majority of the *bona fide* householders and persons or firms living in or doing business on each side of the street in the block upon which such dram-shop shall have its main entrance." The ordinance of the city of Chicago, however, relating to the same subject matter, is as follows: "The mayor of the city of Chicago shall, from time to time, grant licenses for the keeping of dram-shops within the city of Chicago to any person who applies to him in writing, upon said person furnishing sufficient evidence to satisfy him that he or she is a person of good character, and upon furnishing bonds in such amounts as are provided for by the ordinance."

The appellee's petition did not aver that the petitioner was not interested in any other dram-shop or saloon. For this and other reasons the mayor declined to issue the license. The appellee thereupon brought his proceeding by *mandamus* to compel the issuing of the license. He sets out several sections of the ordinance of the village of Hyde Park in force at the time of annexation, and also section 1 of an ordinance of the city of Chicago above quoted, now in force, and which was in force prior to and at the time. The petition avers that the applicant furnished satisfactory proof of his good character and tendered the bonds required by the ordinance, and that the mayor, without any right, refused to issue the license. Appellee insists that the ordinance of the city of Chicago controls the action of the mayor, and not the ordinance of the village of Hyde Park in force at the time of annexation.

The answer of the mayor admits the filing of the petition, with the signatures of property owners and residents; admits the satisfactory proof of good character and the tendering of the bonds as required by the ordinance, but avers that by section 18 of the Annexation act, approved April 25, 1889, and by an ordinance passed by the city of Chicago June 17, 1889, all of the ordinances of the village of Hyde Park in respect to the licensing or regulating of saloons or dram-shops were continued in full force and effect, and that the issuing of licenses to keep saloons or dram-shops in that territory must be governed by the ordinances of that municipality in force at the time of annexation; that the applicant did not present a petition in form as required by those ordinances, nor did it appear to the mayor that the public good required that a license should issue to keep a saloon or dram-shop at 5014 Cottage Grove avenue; that the proposed location was a much traveled thoroughfare in a residence district and adjacent to a public park, and that a saloon at that place would be against the peace,

quiet and good order of that neighborhood. A demurrer was sustained to a part of the answer, and a replication admitting that . the location was on a much traveled thoroughfare in a block adjacent to a public park, and that within fifteen hundred feet of the proposed location there were at least eighty families, aggregating about four hundred people, but denying that a saloon or dram-shop was an objection to such a condition, was filed to the remaining part of the answer. The replication also shows that less than a block south of the proposed location is a licensed saloon, and another is around a corner less than a block away. A demurrer filed to the replication was overruled and a hearing had on the pleadings as above. Thereupon the court awarded a peremptory writ of *mandamus* as prayed for in the petition, from which order this appeal is prosecuted.

WILLIAM G. BEALE, Corporation Counsel, and GEORGE A. DUPUY, Assistant, (LEROY D. THOMAN, of counsel,) for appellant.

JESSE B. BARTON, for appellee:

An ordinance cannot enlarge the charter powers of a municipality, and is void if it attempts to empower any officer or board of officers to do that which is not expressly authorized by the charter. *Chicago* v. *Rumpff*, 45 Ill. 97; *East St. Louis* v. *Wehrung*, 46 id. 392, and 50 id. 28; *Kinmundy* v. *Mahan*, 72 id. 462; *Zanone* v. *Mound City*, 103 id. 552; *People ex rel.* v. *Cregier*, 135 id. 401; *Telegraph Co.* v. *Chicago*, 16 Fed. Rep. 309; *Yick Wo* v. *Hopkins*, 118 U. S. 356; *United States* v. *Rider*, 50 Fed. Rep. 406; *United States* v. *Keokuk*, 45 id. 180.

On annexation all general ordinances of the annexed territory were repealed, unless expressly saved. *McGurn* v. *Board of Education*, 133 Ill. 122; *People* v. *Brown*, 83 id. 95.

Ordinances must be uniform in operation. *Tugman* v. *Chicago*, 78 Ill. 405; *Seeger* v. *Mueller*, 133 id. 94; *Chicago* v. *Trotter*, 136 id. 430.

163—18

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

The record in this case presents for our consideration a number of questions. One of the first matters to be determined is whether the 18th section of the Annexation act, heretofore referred to, had the effect of continuing in force the ordinances of the village of Hyde Park in respect to the licensing of saloons or dram-shops after its annexation to the city of Chicago. The legislature has provided by statute (Hurd's Stat. chap. 24, par. 228,) that an ordinance relating to the prohibition or regulation of dram-shops, in force in a municipality which is annexed to another city, shall continue in full force and effect, unless such ordinance be repealed in the manner provided in such section. The enactment of an act of this character was within the power of the legislature. Where a municipality, generally of lesser dimensions and population, is about to be annexed to a larger, whereby its legal power to protect itself by ordinances of prohibition or regulation of dram-shop licenses might otherwise be taken from it and vested in a body which might disregard the wishes and thwart the will of the annexed district, it is a provision entirely proper and consistent that its desires, expressed by its ordinance adopted by the representatives of its people, be carried out by the larger district to which it is annexed. In this case the city of Chicago, with knowledge that the village of Hyde Park was about to be annexed to it and that certain restrictions regarding the issuing of dram-shop licenses were in existence there, and recognizing the authority given by the act of the legislature in providing that such ordinances remain in force and be binding upon the city to which it was to be annexed, followed the act of the legislature by the passage of the ordinance heretofore referred to. It must be conceded without question that such ordinances, so far as they were otherwise not objectionable,

became binding upon the city of Chicago. Whatever power or authority by virtue of such ordinances was legally invested in the town board of Hyde Park was succeeded to by the city council of the city of Chicago, and the power and authority before then vested in the president of the town board of Hyde Park became vested in the mayor of the city of Chicago.

The question involving the construction and validity of section 18 of the Annexation act, and its applicability to these particular Hyde Park ordinances, was before this court in the case of *People ex rel.* v. *Cregier,* 138 Ill. 401. In that case we found this statute to be valid, and that it had the effect of continuing in force these particular ordinances, so far as they were otherwise unobjectionable or might have been enforced by the proper authorities of Hyde Park before annexation.

The seventh section of the ordinance of the village of Hyde Park set out in the petition provides that "the licensee shall not keep nor in any way be interested in any saloon or dram-shop at more than one place at the same time." The provisions of this ordinance are reasonable. The municipal authorities have the right to presume that where a person is the keeper of or interested in only one dram-shop it will receive his personal attention to an extent it would not were he interested in more, and thus derive assurance of a more careful conduct and management of his business and a stricter observance of the laws enacted for its government and control. There may also be other good and sufficient reasons for such a provision, and we see nothing improper or unreasonable in such requirement nor is our attention called to any. It is always incumbent on one who seeks to have an ordinance set aside as unreasonable, to point out or show affirmatively in what such unreasonableness consists. (*People ex rel.* v. *Cregier, supra.*) But nowhere in the petition nor in the amended petition does the appellee aver

or show that he is not so interested in any other saloon or dram-shop.

The writ of *mandamus* is one of the extraordinary remedies provided by law, and should never be awarded unless the party applying for it shows a clear right to have the thing sought by it done, and by the person or body sought to be coerced. In doubtful cases it should not be granted. The petitioner is bound, like the plaintiff in an ordinary case, to state a case *prima facie* good. (*Springfield and Illinois Southeastern Railway Co.* v. *County Clerk,* 74 Ill. 27.) .The party applying for *mandamus* must show, first, that he has a clear·legal right to have the thing which is asked for done; second, that it is the clear legal duty of the party sought to be coerced to do the thing he is called upon to do. (*Chicago and Alton Railroad Co.* v. *Suffern,* 129 Ill. 274.) "To entitle the relator to relief it must appear that the defendant is under a legal obligation to perform the act sought to be commanded, and every material fact necessary to show such legal duty must be averred in the petition." (*People* v. *Madison County,* 125 Ill. 334.) For a failure to aver in his petition and to show that he did not keep nor was in any way interested in any other saloon or dram-shop, the prayer of the petitioner should have been denied.

Other questions are presented in the record which go to the sufficiency of the number of names on the petition of appellee for license, but as it is admitted by the answer of appellant to the petition for *mandamus* that he believes the petition in that respect was requisite and conformed to the Hyde Park ordinances, we do not deem it necessary to discuss the question.

For the reason indicated the judgment of the Superior Court in awarding the peremptory writ of *mandamus* is reversed and the cause remanded, with direction to dismiss the petition.　　　　　*Reversed and remanded.*