Syllabus.

## THE CHICAGO AND EASTERN RAILROAD COMPANY

### v.

### JAMES FLEXMAN.

*Filed at Ottawa May 12, 1882—Rehearing denied September Term, 1882.*

1. MASTER AND SERVANT—*liability of master for trespass of servant.* Where a servant goes outside of his employment, and while not acting in pursuance of the authority given him inflicts a willful injury upon one not entrusted to his care by the master, or on one to whom the master owes no duty, the act will be that of the servant alone, and the master can not be held responsible for it.

2. SAME—*carrier's duty to protect passengers—liability for acts of servant.* A carrier, whether by steamboat, railway, or otherwise, is under obligation to convey his passenger safely and properly, and to treat him respectfully, and if he entrusts this duty to his servants, the law holds him responsible for the manner in which they execute the trust.

3. A carrier must not only protect his passengers against the violence and insults of strangers and co-passengers, but also against the violence and assaults of his own servants. If this protection is not afforded, and the passenger is assaulted and beaten through the negligence of the carrier's servants, he will be responsible for the injury, and especially for the assault of his servants.

4. Where a passenger on arriving at the place to which he had paid his fare on a railroad train missed his watch, and supposing it to have been stolen, refused to leave the train until he should recover his watch, and the conductor consented that he might remain on the train until it reached another station, and after the train had started and a partial search had been made, a passenger asked who he thought had his watch, when he replied, "That fellow," pointing at a brakeman, who immediately struck him in the face with a lantern: *Held,* that the facts showed a right of action against the railroad company for the injury inflicted by its servant, and that the company occupied the same position towards the passenger as if he had paid his fare to such other station.

APPEAL from the Circuit Court for the Second District;— heard in that court on appeal from the Circuit Court of Iroquois County; the Hon. FRANKLIN BLADES, Judge, presiding.

Mr. WILLIAM ARMSTRONG, for the appellant:

The master is not liable for the willful mischief of his servant, or his acts outside of the line of his employment. *McManus* v. *Cricket*, 1 East, 106; *Croft* v. *Allison*, 4 B. & A. 500; *Lane* v. *Cotton*, 12 Mod. 488; *Middleton* v. *Fowler*, Salk. 282; *Rowe* v. *Birkenhead R. R. Co.* 7 Eng. L. & E. 546; Story on Agency, sec. 456; Wharton on Agency, sec. 540; Angell on Carriers, sec. 604; Cooley on Torts, 533; 2 Kent's Commentaries, 260; *Wright* v. *Wilcox*, 19 Wend. 343; *Vanderbilt* v. *Richmond Turnpike Co.* 2 Conn. 479; *Hibbard* v. *New York and Erie R. R. Co.* 15 N. Y. 455; *Isaac* v. *Third Avenue R. R. Co.* 47 id. 122; *Mott* v. *Consumers' Ice Co.* 73 id. 543; *Evansville and Crawfordsville R. R. Co.* v. *Baum*, 26 Ind. 70; *Indianapolis, Pitts. and Chicago Ry. Co.* v. *Anthony*, 43 id. 183; *Little Miami R. R. Co.* v. *Wetmore*, 19 Ohio St. 110; *Bryant* v. *Rich*, 106 Mass. 180; *Ramsden* v. *B. and A. R. R.* 104 id. 117; *Shirley* v. *Billings*, 8 Bush, 147; *Goddard* v. *Grand Trunk Ry. Co.* 57 Maine, 202; *Johnson* v. *Barber*, 5 Gilm. 425; *Tuller* v. *Voght*, 13 Ill. 277; *Oxford* v. *Peter*, 28 id. 434; *Halty* v. *Markel*, 44 id. 227; *Pritchard* v. *Keefer*, 53 id. 117; *Noble* v. *Cunningham*, 74 id. 51; *Chicago, Burlington and Quincy R. R. Co.* v. *Bryan*, 90 id. 126.

Appellee, at the time of the injury, was a stranger to the appellant, and not a passenger, and was upon the car without payment of his fare.

There is a duty resting upon a passenger to so demean himself towards the servants as not, by misbehavior, to provoke a personal quarrel with them. *Little Miami R. R. Co.* v. *Wetmore*, 19 Ohio St. 133. See, also, *Illinois Central R. R. Co.* v. *Whittemore*, 43 Ill. 420; *Chicago and Northwestern R. R. Co.* v. *Williams*, 55 id. 185; *Chicago, Burlington and Quincy R. R. Co.* v. *Griffin*, 68 id. 499.

Messrs. DOYLE, MORRIS & STEARNS, for the appellee:

It is the duty of a carrier to protect his passenger from violence and insult, from whatever source, and more espe-cially from his own servants. *Goddard* v. *Grand Trunk Ry. Co.* 57 Maine, 202; *Howe* v. *Newmarch*, 12 Allen, 115; Angell & Ames on Corporations, 404; *Moore* v. *Railroad*, 4 Gray, 365; *Seymour* v. *Greenwood*, 7 Hurl. & Nor. 354; *Railroad* v. *Finney*, 10 Wis. 388; *Railroad* v. *Arendiver*, 42 Pa. St. 356; *Weed* v. *Railroad*, 17 N. Y. 362; *Railroad* v. *Derby*, 14 How. 468; *Railroad* v. *Hinds*, 53 Pa. 512; *Flint* v. *Transportation Co.* 34 Conn. 554; *Landreaux* v. *Bell*, 5 La. (O. S.) 275; *Nieto* v. *Clark*, 1 Cliff. 145; *Chamberlain* v. *Chandler*, 3 Mass. 242; *Bryant* v. *Rich*, 106 id. 180; *Chicago and Northwestern Ry. Co.* v. *Croaker*, 36 Wis. 657; *Keokuk Northern Line Packet Co.* v. *True*, 88 Ill. 608.

Mr. CHIEF JUSTICE CRAIG delivered the opinion of the Court:

This was an action brought by James Flexman, against appellant, to recover damages for personal injuries inflicted upon him while a passenger in appellant's cars, by a brake-man in the employ of the company.

The plaintiff, as appears from the evidence, procured a ticket from Hoopeston to Milford, and took passage on a freight train which carried passengers. Soon after plaintiff entered the car he laid down in a seat and went to sleep. When the train arrived at Milford he was notified by the conductor. As plaintiff was about to leave the car he missed his watch, and supposed it had been stolen. He then refused to leave the train until he recovered the watch, and the con-ductor consented that he might remain on the train until they should reach Watseka. After the train had started, a passenger assisted plaintiff in making a partial search for the watch, but it was not then found. The passenger then inquired of plaintiff who he thought had his watch, to which

he replied, "That fellow," pointing at the brakeman. Immediately after the remark was made the brakeman struck plaintiff in the face with a railroad lantern, inflicting the injuries complained of. These are substantially the facts, over which there is no controversy by the parties.

After the plaintiff had introduced all his testimony, the defendant entered a motion to exclude the evidence from the jury, and asked for an order directing the jury to find a verdict for defendant. The court denied the motion, and the defendant excepted. This decision of the court presents the question whether the facts proven, conceding them to be true, constitute a cause of action against the defendant.

The point is made that as plaintiff only paid fare to Milford he ought not to be regarded as a passenger on the train after he left that place. We do not regard this position well taken. The conductor did not demand or require fare from the plaintiff; had he done so, no doubt the required amount would have been paid. As the conductor failed to call for fare, it must be regarded as waived. At all events, we have no hesitation in holding that the railroad company occupied the same position towards plaintiff that it would have occupied had he paid his fare.

But it is said, "that if the plaintiff was injured by a servant of appellant, it was an act outside of the employment of the servant who committed the act, and not in furtherance of his employment by the master." This position is predicated upon *McManus* v. *Cricket*, 1 East, 106, and like cases which have followed it. In the case cited Lord KENYON said : "It is laid down by HOLT, Ch. J., as a general position, 'that no master is chargeable with the acts of his servant but when he acts in the execution of the authority given him.' Now, when a servant quits sight of the object for which he is employed, and without having in view his master's orders pursues that which his own malice suggests, he no longer acts in pursuance of the authority given him, and, according to

the doctrine of Lord Holt, his master will not be answerable for such act." The doctrine announced is no doubt correct when applied to a proper case. If, for example, a conductor or brakeman in the employ of a railroad company should willfully or maliciously assault a stranger,—a person to whom the railroad company owed no obligation whatever, —the master in such a case would not be liable for the act of the servant; but when the same doctrine is invoked to control a case where an assault has been made by the servant of the company upon a passenger on one of its trains, a different question is presented—one which rests entirely upon a different principle.

What are the obligations and duties of a common carrier toward its passengers? In *Keokuk Northern Line Packet Co.* v. *True*, 88 Ill. 608, it was held that a steamboat company, as a carrier of passengers for hire, is, through its officers and servants, bound to the utmost practicable care and diligence to carry its passengers safely to their place of destination, and to use all reasonably practicable care and diligence to maintain among the crew of the boat, including deck hands and roustabouts, such a degree of order and discipline as may be requisite for the safety of its passengers. The same rule that governs a steamboat company must also be applied to a railroad company, as the duties and obligations resting upon the two are the same, or any other company which carries passengers for hire. In *Goddard* v. *Grand Trunk Ry. Co.* 57 Me. 202, in discussing this question, the court says: "The carrier's obligation is to carry his passenger safely and properly, and to treat him respectfully; and if he entrusts the performance of this duty to his servants, the law holds him responsible for the manner in which they execute the trust.     *     *     *     He must not only protect his passengers against the violence and insults of strangers and co-passengers, but, *a fortiori*, against the violence and insults of his own servants. If this duty to the passenger is not

performed,—if this protection is not furnished,—but, on the contrary, the passenger is assaulted and insulted through the negligence of the carrier's servant, the carrier is necessarily responsible." In *Bryant* v. *Rich*, 106 Mass. 180, where the plaintiff, a passenger on a steamboat, was assaulted and injured by the steward and some of the table waiters, the defendant, as a common carrier, was held liable for the injury. In *Croaker* v. *Chicago and Northwestern Ry. Co.* 36 Wis. 657, where the conductor of a railroad train kissed a female passenger against her will, the court, in an elaborate opinion, held the railroad company liable for compensatory damages. It is there said: "We can not think there is a question of the respondent's right to recover against the appellant for a tort which was a breach of the contract of carriage." In *Shirley* v. *Billings*, 8 Bush, 147, where a passenger on defendant's boat was assaulted and injured by an officer on the boat, the defendant was held liable. See, also, *McKinley* v. *Chicago and Northwestern R. R. Co.* 44 Iowa, 314, and *N. O., St. L. and C. R. R. Co.* v. *Burke*, 53 Miss. 200. Many other authorities holding the same doctrine might be cited, but we do not regard it necessary. It is true there are authorities holding the opposite view, but we do not think they declare the reason or logic of the law, and we are not prepared to follow them.

The appellant was a common carrier of passengers. As such it was not an insurer against any possible injury that a passenger might receive while on the train, but the company was bound to furnish a safe track, cars and machinery of the most approved quality, and place the trains in the hands of skillful engineers and competent managers,—the agents and servants were bound to be qualified and competent for their several employments. Again, the law required appellant, as a common carrier, to use all reasonable exertion to protect its passengers from insult or injury from fellow passengers who might be on the train, and if the agents of appellant in

charge of the train should fail to use reasonable diligence to protect its passengers from injuries from strangers while on board the train, the company would be liable. So, too, the contract which existed between appellant as a common carrier and appellee as a passenger, was a guaranty on behalf of the carrier that appellee should be protected against personal injury from the agents or servants of appellant in charge of the train. The company placed these men in charge of the train. It alone had the power of removal, and justice demands that it should be held responsible for their wrongful acts towards passengers while in charge of the train. Any other rule might place the traveling public at the mercy of any reckless employé a railroad company might see fit to employ, and we are not inclined to establish a precedent which will impair the personal security of a passenger.

We are of opinion that the evidence showed a legal cause of action in plaintiff, and the court did not err in overruling the motion to exclude the evidence from the jury. Two instructions given for the plaintiff have been somewhat criticized, but we think they were in the main correct.

The judgment will be affirmed.

*Judgment affirmed.*