PHILIP POSTEHER *et al.*, Petitioners-Appellants, *v.* PANA COMMUNITY UNIT SCHOOL DISTRICT NO. 8, CHRISTIAN COUNTY, Respondent-Appellee.

Fifth District    No. 80-492

Opinion filed June 3, 1981.

Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., of Decatur (John T. Taylor, of counsel), for appellants.

Fribley, Proffitt & Consoer, of Pana (James L. Proffitt, of counsel), for appellee.

Mr. JUSTICE JONES delivered the opinion of the court:

On March 30, 1979, petitioners, Philip and Joyce Posteher, individually and as next friends of their children, Jean and Tara Posteher, filed a petition for a writ of *mandamus* and for a declaratory judgment in the circuit court of Christian County seeking a bus route other than that adopted by respondent school district. The basis for plaintiffs' action, as stated in their complaint, is that the plaintiffs' children are compelled to walk an unsafe route in order to board the bus at the designated pickup point, that plaintiffs' children could be required to walk a distance greater than the majority of bus-riding children in order to board the bus and that the route selected by the defendant Board is not the safest available for plaintiffs' children.

An evidentiary hearing on the petition was held on March 17, 1980. Following the hearing the court dismissed the petition and entered judgment for respondent. Petitioners appeal.

At the evidentiary hearing it was undisputed that respondent had complied with its statutory duty to provide petitioners' children with free bus transportation to the parochial school they attended (Ill. Rev. Stat. 1979, ch. 122, pars. 29—3 and 29—4). It is petitioners' position on appeal, however, that the duty of the defendant Board extends beyond a bare compliance with the statute. They maintain that respondent has an inherent duty to provide the safest possible route and that respondent has failed in that duty. Petitioners have not cited, nor have we found, any authority which imposes such a standard on a school board in its selection of bus routes.

The locality of the dispute involves Route 51 to the east and north of Pana in Christian County. As it is concerned in this case Route 51 extends in a northerly direction from Route 16 in Christian County. In the northeast quadrant of the intersection made by these two highways is the

Rosebud Motel and Cafe. To the north approximately one mile is an east-west county road which crosses Route 51. Petitioners' home fronts upon that county road 173 feet east of Route 51, and its driveway affords access to the county road and not Route 51. North on Route 51, approximately one-fourth of a mile from the intersection of the county road, a railroad track crosses the highway. The area is described as somewhat hilly. There are hills on Route 51 both to the north and to the south of the intersection of the county road. One traveling north on Route 51 from Route 16 would crest a hill, descend to the valley and start upgrade on the next hill before coming to the intersection of the county road. If one travels east from Route 51 to petitioners' residence he must also go upgrade. The driveway for petitioners' home is at the crest of this hill.

The route traveled by the bus that picks up the petitioners' children, as finally selected by the respondent District, approaches Route 51 from the west upon the county road. Upon reaching Route 51 the bus turns to the right (south) and travels to the Rosebud Motel for a 180-degree turnaround and then proceeds north on Route 51. The bus stops and picks up petitioner's children on Route 51, where it intersects with the county road. After picking up the petitioners' children, the bus proceeds north on Route 51 to complete its route.

Respondent presented evidence to show that it had considered several alternatives for picking up petitioners' children and that safety problems existed with each potential route. Transportation supervisor, Donald Rakers, testified that he believed the school bus should not pick up petitioners' children at their home because to cross Route 51 while traveling from west to east at that point would be unsafe since the bus would be required to stop at Route 51 and necessarily would present a slow-moving broadside target for fast-moving automobiles coming from both directions on Route 51. Rakers acknowledged, however, that in past years the bus had passed in front of petitioners' home.

Petitioners had been tendered an alternate route by the defendant Board in which the children would be required to walk east along the county road approximately one mile to board the bus at Kater Corner. Although this route would have been in compliance with the statute, for obvious reasons it was unsatisfactory to petitioners. The objections of petitioners to the bus route and pickup selected by the Board for their children are addressed to the Route 51 pickup as we have described it. Petitioners consider a pickup of children while the bus is stopped on Route 51 dangerous because of the speed at which autos and trucks travel upon that highway. As described by petitioner Philip Posteher, there are 300 to 400 feet of visibility to the bus pickup as northbound cars crest the hill to the south, with approximately the same visibility to the bus pickup as southbound cars crest the hill to the north.

The position of petitioners seems to be that the safest and most feasible route for them would be one in which the bus travels from west to east along the county road, crosses Route 51 and picks up petitioners' children at their driveway.

The petition for *mandamus* alleged that the bus route and pickup point selected by the District for petitioners' children were unsafe and hazardous. To give consequence to the factual assertion, petitioners' brief asserts that the respondent-District has the duty to provide the safest bus route and pickup point available.

The question of the duty owed by a school district to its bus-riding students in the selection of bus routes and pickup points appears to be one of first impression in Illinois. If the duty is not so extensive as that for which petitioners contend, then is there any other duty? If so, what is its source and what is its extent?

When we speak of "duty," our use is synonymous with the term "legal duty" and denotes that which the law requires to be done or forborne to a determinate person or to the public at large and is correlative to a right vested in such determinate person or in the public. *People v. McGreal* (1971), 4 Ill. App. 3d 312, 278 N.E.2d 504; *Pennsylvania Co. v. Frana* (1883), 13 Ill. App. 91; 28 C.J.S. Duty (1941).

Sections 29—3 and 29—4 of the School Code (Ill. Rev. Stat. 1979, ch. 122, pars. 29—3 and 29—4) impose upon school districts a duty to transport pupils residing 1½ miles or more from the attendance center to which they are assigned, unless public transportation is available. Transportation is also required to be furnished to pupils residing less than 1½ miles from their attendance center if walking constitutes a serious hazard to the safety of the pupil. The statutes say nothing with regard to the selection of bus routes or pickup points or the standards which are to be applied in the bus route selection process. The duty imposed by the statute, then, does not extend beyond that which it prescribes, and it is obvious and conceded that the respondent District has complied with the duty imposed by the statutes.

However, the duty the petitioners ask this court to declare goes beyond the requirements of the statute. It is obvious that a school district or its officers cannot select bus routes and pickup points with impunity, they cannot act arbitrarily or capriciously, they cannot act with disregard for the safety, comfort and well-being of their pupils. More is required by law. After consideration of the matter we must agree with petitioners that a duty reaching beyond compliance with the bare statutory requirements does attend the selection of bus routes and pickup points. That is to say, the law does impose a duty upon school districts, their officials and employees, in selecting bus routes and pickup points as they discharge

their statutory obligation to transport pupils and such duty arises from the common law of Illinois. What is that duty?

Petitioners do not contend that the duty owed is that of absolute safety for such is unobtainable in this society. Similarly, we think a standard which requires the "safest" route is also unobtainable. In every instance that standard would be difficult, if not impossible, to attain and when viewed in retrospect from some untoward incident or accident, always subject to criticism. It is a standard which would largely foreclose the exercise of discretion by a school district in the selection of bus routes and pickup points.

In view of the many factors that must be considered by a school district in establishing bus routes and pickup points, it is essential that it be accorded a large measure of discretion. Since the school district has the obligation to establish the bus routes and pickup points for all students who fall within the statutory prescriptions, it alone can see the multitude of requirements and demands to be made upon the service and their capacity to fulfill them. Factors of convenience and comfort of individual pupils may be considered but cannot be controlling. Individual preferences may enter into the mix of considerations but must yield when the best interests of the District and all its pupils require it. It should be obvious that a school district cannot be expected to tailor a bus route and pickup point to the satisfaction of each patron.

We believe the extent of the duty imposed upon a school district in the selection of its school bus routes and pickup points is this: A school district has full discretion in establishing its school bus routes and pickup points; it must comply with the terms of the applicable statutes and the rules, regulations and guidelines adopted by the State Board of Education; it must not act capriciously or arbitrarily, and it may not select routes or pickup points that needlessly expose the pupils to any serious hazards to safety exceeding those that normally attend school bus operations. As a corollary, the decision of a school district in selecting bus routes and pickup points will not be set aside unless there has been an abuse of its discretion.

In applying the foregoing standard in this case, we note that the extent of the proof offered by petitioners was that the route and pickup point selected by the District was unsatisfactory to petitioners and had some aspects that could be improved upon if the "safest" route was the standard to be applied. On the other hand, the District produced evidence which showed its considerations in deriving the existing route and pickup points. That the District did in fact have a real concern for safety of the pupils, including those of petitioners, is graphically demonstrated by the fact that when the bus arrives at Route 51 from the west, a point

just across the highway from the pickup point for petitioners' children, it is required to turn south, travel one mile, make a 180-degree turn and travel one mile north to the pickup point. This extra maneuver is required to be executed in order that petitioners' children may board the bus as it is stopped in the northbound lane, and it does away with the need for them to cross the highway to board as well as with the need for the bus to cross the highway from a stop and thus to present a slow-moving, broadside target to Route 51 traffic.

The evidence also shows that the District did not act in an arbitrary or capricious manner in the route selection. A number of directors from the governing board actually boarded a bus and traveled the route in order to experience first-hand the conditions and problems presented. This was done following petitioners' complaint and prior to the final decision on that complaint. Moreover, witnesses for the District leveled legitimate criticism of the route preferred by petitioners, including safety risks.

In its judgment the trial court made the following finding:

"[I]n fact the school board did not arbitrarily turn a 'deaf ear' to the plight of Petitioner. It appears to this court that only after a thorough inquiry and comparison of routes did the Board decide upon the present one."

With this finding we must agree, and we hold that the District was well within the standards imposed by the duty which governed their actions and that no abuse of discretion occurred.

When *mandamus* is sought, it is incumbent upon the petitioners to show that they have a clear and undoubted right to it. (*People ex rel. Cantu v. School Directors* (1965), 58 Ill. App. 2d 282, 208 N.E.2d 301.) One who seeks *mandamus* must show a clear and undoubted right to the relief prayed and a corresponding duty on the part of the respondent to do the act sought to be compelled. (*Hooper v. Snow* (1927), 326 Ill. 142, 157 N.E. 185; *People ex rel. Cantu v. School Directors.*) This is a burden which rests on the petitioner, and it is incumbent on him to show every material fact necessary to establish the existence of such right and duty. *People ex rel. Patton v. Sellars* (1899), 179 Ill. 170, 53 N.E. 545; *Swift v. Klein* (1896), 163 Ill. 269, 45 N.E. 219.

For the reasons assigned the petitioners failed to establish their right to a judgment in *mandamus*, and the judgment of the trial court is affirmed.

For the same reasons the petitioners are not entitled to a judgment in *mandamus* they are not entitled to a declaratory judgment as requested in count II of their complaint.

Affirmed.

HARRISON and KARNS, JJ., concur.