AISHA BROWNE, Plaintiff-Appellant, v. SCR MEDICAL TRANSPORTATION SERVICES, INC., Defendant-Appellee.

First District (3rd Division)   No. 1—04—0141

Opinion filed March 30, 2005.

Power, Rogers & Smith, P.C., of Chicago (Larry R. Rogers and Devon C. Bruce, of counsel), for appellant.

Johnson & Bell, Ltd., of Chicago (Jack T. Riley and Cecilio L. Franco IV, of counsel), for appellee.

PRESIDING JUSTICE KARNEZIS delivered the opinion of the court:

Plaintiff-appellant Aisha Browne (Browne) appeals from an order of the *circuit court granting defendant-appellee SCR Medical Transportation Services, Inc.'s* (SCR), motion for summary judgment. On appeal, Browne argues the circuit court erred in granting summary judgment because there were questions of fact as to whether SCR was a common carrier and whether SCR should have known that its employee, Robert Britton, posed a danger to its customers.

This lawsuit arose as the result of SCR's employee, Robert Britton, sexually assaulting Browne. SCR is a medical transport company that provides paratransit services to disabled persons. In 1995, SCR entered into a contract with the Chicago Transit Authority (CTA) to transport disabled persons who were unable to use the CTA's mainline services. On July 14, 1995, Browne, pursuant to SCR's contract with the CTA, was a passenger in a vehicle driven by Robert Britton. Browne, who has cerebral palsy and is disabled, accused Britton of sexually assaulting her while she was in the vehicle and again a second time, inside her home. Britton was arrested and later convicted of the crimes. Browne filed this lawsuit against SCR and other defendants alleging that SCR, as a common carrier, owed Browne a heightened

standard of care. SCR filed a motion for summary judgment alleging that because SCR was not a common carrier it owed its customers an ordinary standard of care and was not liable for the intentional criminal acts of its employee. The circuit court agreed and granted SCR's motion for summary judgment. Browne now appeals.

## BACKGROUND

The contract between SCR and the CTA provided that SCR would perform certain specialized transportation services for people with disabilities and the CTA would agree to provide a subsidy to SCR for each person transported "in accordance with the terms and conditions set forth herein." The contract limited service to "those people with disabilities who are properly certified and are enrolled in the Special Services Program."

According to SCR president Pamela Rakestraw, since SCR's inception in 1986, it has provided paratransit services to disabled persons only pursuant to written contracts. SCR's services have never been available to the general public. Pursuant to SCR's contract with the CTA, SCR was to provide services only to disabled persons certified under the Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 et seq. (2000)) and who placed a reservation with SCR for a specific trip or arranged for a prescheduled subscription service. SCR would then subject each trip request to a screening process whereby an SCR employee would check the requesting rider's computer file before scheduling a trip to determine if the passenger was eligible not only for paratransit services but also for the specific ride requested. SCR could and did refuse requests for trips from disabled persons who were either not properly certified by the CTA, who were not enrolled in the CTA's Special Services Program, or who were not eligible for the specific ride requested. SCR also declined requests for the following reasons: (1) the form of payment was unacceptable; (2) SCR did not have the specific type of vehicle needed to transport the individual given the individual's specific disability, handicap and/or needs; (3) there were not enough vehicles in SCR's fleet to accommodate the request for the trip at the time it was made; (4) the pick-up location or the destination was too far or was too inconvenient; or (5) the individual made specific requests with regard to the manner or method of transport that SCR deemed to be unsafe.

Robert Britton was hired in 1994 by a company known as Labor Leasing to become a driver for SCR. On January 5, 1995, Britton became an employee of SCR when the service agreement between Labor Leasing and SCR terminated. Pursuant to SCR's contract with the CTA, any driver in the Special Services Program must be precerti-

fied by the CTA. Prior to certification, SCR had to show that it applied for a criminal background check on the driver. SCR submitted Britton's name to the Illinois State Police for a background check but did not submit his fingerprints. Pamela Rakestraw stated in her deposition that she was unaware of any law that required SCR to submit Britton's fingerprints with his background check. The background check indicated Britton had no prior convictions. Specifically, the letter stated:

> "Based upon the information contained in your request, no conviction information was identified. This response is not a guarantee that conviction information on this individual does not exist under other personal identities. It is common for criminals to use false names and dates of birth which will not be identified by a non-fingerprint request for conviction information."

Britton's record from the City of Chicago, department of police, which was made part of the record on appeal, indicates that Britton had a long criminal history of arrests, but no prior convictions before the July 1995 assault of Browne. The report also indicates that Britton used the alias "Robert Vaughn."

At Britton's discovery deposition, Britton stated he never told SCR that he had previously used the name Robert Vaughn. He further stated he had no prior convictions before he was hired by SCR or before the alleged assault of Browne.

Nancy Isaac, the CTA's general manager for paratransit operations, stated in her deposition that after the CTA received the results of Britton's background check, he was certified by the CTA. She also stated that prior arrests would not warrant decertification by the CTA, but prior convictions would.

Several months prior to the incident involving Browne, one of SCR's customers, Esperanza Banda, accused an SCR driver of exposing himself to her and attempting to kiss her. Britton was suspected because he was the driver of the vehicle that was transporting Banda at the time of the alleged incident. Britton denied the allegations and Banda was unable to identify Britton in a lineup. Both Pamela and Stanley Rakestraw went to Banda's treatment center from where she had been picked up and spoke with one of Banda's therapists. The therapist indicated that Banda had a boyfriend at the center, which was not looked upon with favor and Banda tried to hide this from her mother. The therapist suggested that Banda might have thought she would get into trouble because she had been seen kissing her boyfriend, so she fabricated a story that Britton tried to kiss her. Stanley Rakestraw also stated in his deposition that when he informed SCR's other drivers about Banda's allegations, they indicated that

they would sometimes have to pull over and separate Banda and another individual because they were "making out" in the vehicle.

## ANALYSIS

Browne maintains on appeal that the circuit court erred in granting summary judgment because there was a question of fact as to whether SCR was a common carrier and whether SCR should have known that Britton was unfit to transport disabled individuals.

Summary judgment is proper if the pleadings, depositions, affidavits, admissions, and other matters on file demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Smith v. Armor Plus Co.*, 248 Ill. App. 3d 831, 839 (1993). The court should construe the evidence strictly against the movant and liberally in favor of the opponent. *Richter v. Burton Investment Properties, Inc.*, 240 Ill. App. 3d 998, 1001 (1993). If reasonable persons could draw different inferences from undisputed facts, an issue of fact exists. *Armor*, 248 Ill. App. 3d at 839. Appellate review of an order granting summary judgment is *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992).

### Common Carrier

Browne argues the circuit court's order granting summary judgment was in error because there was a question of fact as to whether SCR was a common carrier. Browne advances three arguments in support of her contention. Browne's arguments are based on: (1) the Americans with Disabilities Act (the ADA); (2) defendant's contractual relationship with the CTA; and (3) defendant's agency relationship with the CTA. Before addressing Browne's contentions, we set forth some background on the distinction between common carriers and private carriers.

In Illinois, a common carrier is "one who undertakes for the public to transport from place to place such persons or the goods of such persons as choose to employ him for hire." *Illinois Highway Transportation Co. v. Hantel*, 323 Ill. App. 364, 374 (1944). The test to distinguish a common carrier from a private carrier is whether the carrier serves all of the public alike. *Hantel*, 323 Ill. App. at 375. A common carrier is "one who undertakes for hire to carry all persons indifferently who may apply for passage so long as there is room and there is no legal excuse for refusal." *Hantel*, 323 Ill. App. at 376. A private carrier on the other hand "undertakes by special agreement, in a particular instance only, to transport persons or property from one place to another either gratuitously or for hire." *Doe v. Rockdale School District No. 84*, 287 Ill. App. 3d 791, 794 (1997). Further, a

private carrier "makes no profession to carry all who apply for carriage" and "is not bound to serve every person who may apply." *Rockdale School District*, 287 Ill. App. 3d at 794.

Although Browne does not specifically argue that SCR was a common carrier pursuant to the above definitions, we take a moment to address the issue directly. The question of whether a medical transport van is a common carrier has not yet been addressed by this court. However, we can look to similar case law for guidance. In *Rockdale*, this court addressed the issue of whether a school bus was a common carrier. In that case, the plaintiff was assaulted by another student as he was transported to school. The bus company was operating pursuant to a contract with the school district to transport special education students at an agreed-upon rate and for an agreed-upon period of time. The contract did not provide for the transportation of any additional passengers or cargo. This court found on appeal that the bus company was not a common carrier because it did not provide services to the general public. The court noted that the bus company neither advertised its services to the general public nor transported indiscriminately all members of the public who applied. The court also noted that the bus company provided a specific service to a specific group of people because it only transported special education students between home and school by specific agreement. In conclusion, the court determined the bus company was acting as a private carrier and not a common carrier when the assault occurred. *Rockdale*, 287 Ill. App. 3d at 795.

■ Here, at the time of the assaults, SCR did not serve all of the general public. SCR served only those individuals who met its eligibility requirements. SCR also could decline to serve anyone based on numerous factors such as location and availability of medical transport vans. Because SCR "makes no profession to carry all who apply for carriage" and "is not bound to serve every person who may apply," we find that SCR was not a common carrier at the time of the assaults.

We now address Browne's specific arguments. Browne maintains that because of SCR's contractual relationship with the CTA, SCR "step[ped] into the shoes of the CTA for the purpose of providing service to disabled members of the general public" and became a common carrier. Browne also argues that because the CTA was a common carrier and had to comply with the requirements of the ADA, SCR also had to comply with the ADA and owed its passengers the highest standard of care. Browne further argues that SCR became a common carrier based on its agency relationship with the CTA.

Here, Browne is unable to cite to any relevant authority to support her contentions and our research of case law nationwide has

failed to uncover any as well. We fail to comprehend how defendant's contract with the CTA as well as the requirements of the ADA somehow transformed SCR into a common carrier. It is undisputed that SCR transported disabled individuals pursuant to its contract with the CTA. As stated above, SCR did not serve the general public. SCR contracted to serve only those individuals who were unable to use the CTA's mainline service and SCR only did so at its discretion. These are not the characteristics of a common carrier.

Browne also argues that a question of fact existed as to whether SCR owed her a heightened level of care because it knew she was disabled. Browne relies on Illinois Pattern Jury Instructions, Civil, No. 100.08 (1995) (hereinafter IPI Civil (1995) No. 100.08). The instruction provides:

> "When a carrier is aware that a passenger is [mentally or physically disabled] [feeble or infirm] [intoxicated] [a child traveling alone] so that the hazards of travel are increased as to [him] [her], it is the duty of the carrier to provide that additional care which the circumstances reasonably require. The failure of the defendant to fulfill this duty is negligence."

However, the notes to the instruction state:

> "This instruction shall be used *** to define the duty underlying the issue of negligence when the defendant is a common carrier." IPI Civil (1995) No. 100.08, Notes.

Therefore, it is abundantly clear that the instruction only applies to common carriers, which SCR is not. We reject Browne's contention.

## Negligent Hiring

■ Browne next contends the circuit court erred in granting SCR's motion for summary judgment because a question of fact existed as to whether Browne established a cause of action against SCR for the negligent hiring of Britton. Browne argues that SCR should have learned of Britton's criminal history before he was hired because SCR was required to submit Britton's fingerprints to the Illinois State Police pursuant to section 28b of the Metropolitan Transit Authority Act (70 ILCS 3605/28b (West 2000)). Browne further argues that the incident with Esperanza Banda should also have put SCR on notice that Britton posed a danger to its customers.

In a cause of action for negligent hiring, the plaintiff must plead and prove (1) that the employer knew or should have known that the employee had a particular unfitness for the position so as to create a danger of harm to third persons; (2) that such particular unfitness was known or should have been known at the time of the employee's hiring or retention; and (3) that this particular unfitness proximately caused the plaintiff's injury. *Van Horne v. Muller*, 185 Ill. 2d 299, 311 (1998).

Here, the record indicates that SCR did not know or could not have known about Britton's "criminal history." SCR submitted Britton's name to the Illinois State Police to ascertain whether Britton had any prior convictions, not prior arrests. In response to SCR's request, the letter stated that "no conviction information was identified." Although the letter indicated there was no "guarantee" that conviction information did not exist because "criminals" can use false names that would not be identified by a nonfingerprint request, the record indicates Britton had no prior convictions when he was hired. Britton's "rap sheet" indicates he had been arrested numerous times for various offenses, which included rape; however, none of these arrests resulted in convictions. Even if SCR had complied with section 28b and submitted Britton's fingerprints, SCR still would not have learned of Britton's prior arrests. Therefore, we cannot conclude that SCR knew or should have known of Britton's criminal history.

Further, the incident involving Esperanza Banda would not have put SCR on notice that Britton posed a danger to its passengers. Although Banda reported that a driver had exposed himself to her, she was unable to identify Britton as the driver. Also, when the Rakestraws spoke with Banda's therapists about the incident, the therapists indicated that Banda could have fabricated the story. Under these circumstances, we find the circuit court did not err in granting summary judgment.

Accordingly, we affirm the judgment of the circuit court.

Affirmed.

HOFFMAN and SOUTH, JJ., concur.