Filed 3/28/08      NO. 4-07-0297

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| MISTY GREEN, | ) | Appeal from |
| Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | Macoupin County |
| CARLINVILLE COMMUNITY UNIT SCHOOL | ) | No. 05L7 |
| DISTRICT NO. 1, | ) | |
| Defendant-Appellee, | ) | |
| and | ) | Honorable |
| LUCILLE MANSFIELD, | ) | Roger W. Holmes, |
| Defendant. | ) | Judge Presiding. |

_____

JUSTICE STEIGMANN delivered the opinion of the court:

In February 2005, plaintiff, Misty Green, sued defendants Carlinville Community Unit School District No. 1 (District) and Lucille Mansfield, based on Green's allegation that Mansfield sexually abused her when Green was a minor. In July 2006, the District moved for summary judgment, and in November 2006, the trial court granted the District's motion.

Green appeals, arguing that the trial court erred by granting the District's motion for summary judgment. We affirm in part and reverse and remand in part with directions.

I. BACKGROUND

From August 1991 through May 1992, Green attended kindergarten at North Elementary, which was operated by the District. Green rode the District's school bus to and from school. In September 1991, Green told her mother that Mansfield,

a school bus driver employed by the District, had sexually molested her.  In May 1992, Mansfield was convicted of three counts of child abuse and sentenced to four years in prison.

In September 1992, Green's parents, along with six other families, collectively filed a complaint in federal district court against the District (case No. 92-3238).  Their complaint alleged that over the course of several months, Mansfield sexually abused and assaulted their children.  The District filed a motion to dismiss, arguing in part that it was not liable for the intentional torts of Mansfield because the District was not a common carrier.  In July 1993, the federal court denied the District's motion upon determining that Illinois courts had previously held that school districts that transport children by bus must be held to the same standard of care as common carriers.  Hammann v. Carlinville Community Unit School District No. 1, No. 92-3238 (C.D. Ill. July 8, 1993).  However, prior to trial, Green's parents voluntarily withdrew their complaint, and the federal court dismissed their case without prejudice.  Hammann v. Carlinville Community Unit School District No. 1, No. 92-3238 (C.D. Ill. April 8, 1994).

In February 2005, Green filed a complaint against the District and Mansfield.  Green alleged that the District (1) engaged in intentional infliction of emotional distress (count I), (2) committed assault and battery (count III), (3) was

negligent per se (count V), (4) negligently hired Mansfield (count VI), (5) engaged in negligent supervision (count VII), and (6) was a common carrier (count VIII).  All of the counts against the District were primarily premised on count VIII's allegation that the District was a common carrier and, thus, "had a non-del[e]gable duty of care towards its passengers, with such duty to retain direct and primary responsibility for operating the bus with the highest degree of care."  However, during the course of the trial court proceedings, Green also argued that the District owed its student bus passengers the highest degree of care, regardless of whether it was a common carrier.

In April 2005, the District filed a motion to dismiss Green's complaint arguing, in part that (1) it was not a common carrier and (2) the complaint placed a greater duty on the District than that imposed by law.

Following an August 2005 hearing, the trial court denied the District's motion upon determining that the 1992 federal court ruling denying the District's motion to dismiss should be given great weight since Green was a party to the federal action at the time of the federal court's ruling.  The court also found that the District's standard of care, rather than its status as a common carrier, governed the court's review of the complaint.

In December 2005, the case was reassigned to another

- 3 -

trial judge.  In July 2006, prior to any District representative being deposed, the District filed a motion for summary judgment, arguing that (1) the District was not operating as a common carrier; (2) Mansfield was not acting within the scope of her employment when the alleged conduct occurred; (3) the statute mandating that school districts perform criminal-background checks before hiring an employee (105 ILCS 5/34-18.5 (West 2006)), which Green relied on in count V of her complaint, was not in effect when the District hired Mansfield; (4) the District had immunity over its hiring decisions, pursuant to section 2-201 of the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/2-201 (West 2006)); and (5) no factual support existed that the District negligently supervised Mansfield when she was acting within the scope of her employment. The District's affidavit in support of its motion stated that the purpose of the District's buses was to transport registered District students to and from school and school-related activities.

In November 2006, the trial court granted the District's motion for summary judgment.  In so doing, the court determined that (1) each of Green's counts against the District was premised on the allegation that the District was a common carrier, which imposes a heightened duty of care, (2) the District was not a common carrier, and (3) Green's negligence per

se allegations against the District failed because the statute Green relied on was not in effect when the District hired Mansfield. The court later found that no just reason existed to delay either enforcement or appeal of its ruling (210 Ill. 2d R. 304(a)).

This appeal followed.

## II. ANALYSIS

### A. Standard of Review

We review de novo a trial court's decision to grant a motion for summary judgment. Jones v. Chicago HMO Ltd. of Illinois, 191 Ill. 2d 278, 291, 730 N.E.2d 1119, 1127 (2000). A party is entitled to summary judgment if the pleadings, depositions, and admissions on file, together with any affidavits, show that no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law (735 ILCS 5/2-1005 (West 2006)).

### B. The Trial Court's Grant of Summary Judgment as to Counts I, III, and VII

Green first argues that the trial court erred by granting summary judgment as to count I (intentional infliction of emotional distress), count III (assault and battery), and count VII (negligent supervision). Specifically, she contends that (1) the court erred by determining that the District was not acting as a common carrier, which imposes a heightened duty of care; and (2) even if the District was not acting as a common

- 5 -

carrier, it should be held to the same standard as a common carrier. We agree with Green's second contention.

1. The Trial Court's Determination That the
District Was Not Acting as a Common Carrier

In Doe v. Rockdale School District No. 84, 287 Ill. App. 3d 791, 793-94, 679 N.E.2d 771, 773 (1997), the Third District discussed the distinction between common and private carriers, as follows:

"Long-standing authority in Illinois has held that a common carrier is 'one who undertakes for the public to transport from place to place such persons or the goods of such as choose to employ him for hire.' [Citations.] A common carrier 'undertakes for hire to carry all persons indifferently who may apply for passage so long as there is room and there is no legal excuse for refusal.' [Citation.] Moreover, a common carrier may be liable for an unexcused refusal to carry all who apply. [Citation.] The definitive test to be employed to determine if a carrier is a common carrier is whether the carrier serves all of the public alike. [Citations.]

A private carrier, by contrast,

- 6 -

undertakes by special agreement, in a
particular instance only, to transport
persons or property from one place to another
either gratuitously or for hire.  [Citation.]
A private carrier makes no public profession
to carry all who apply for carriage,
transports only by special agreement, and is
not bound to serve every person who may
apply."

In Doe, the plaintiff sued the Rockdale School District, alleging that another student sexually assaulted her son on a school bus while traveling to school.  After denying the Rockdale School District's motion to dismiss, the trial court presented the following certified question to the appellate court:  "whether the defendant providing transportation to students to and from special[-]education classes out of county pursuant to contract with Crawford Bus Service, Inc. (Crawford), is operating as a common carrier."  Doe, 287 Ill. App. 3d at 793, 679 N.E.2d at 772.

The Third District concluded that the contract between the Rockdale School District and Crawford did not provide for the transportation of any additional passengers or cargo by Crawford other than the school district's special-education students. Accordingly, the court stated the following:

- 7 -

"Given the total absence of any allegation that Crawford either held itself out to, or in fact did, serve the general public or any members thereof except those students it contracted to carry, we are compelled to agree that Crawford, and by extension any principal of Crawford [i.e., Rockdale], was acting as a private carrier [and not a common carrier] when the alleged injury occurred." Doe, 287 Ill. App. 3d at 795, 679 N.E.2d at 774.

In this case, Green did not allege that the District (1) advertised its bus services to members of the general public or (2) transported all members of the general public in a indiscriminate manner. Further, according to the District's unrebutted affidavit, the District only transported its students to and from school and school-related activities. Thus, we conclude that the trial court did not err by determining that the District was not acting as a common carrier.

2. Green's Claim That the District Should Be Held to the Same Standard of Care as a Common Carrier

Besides not being a common carrier, the District argues that Green cannot overcome the fact that under Illinois law an employer is not vicariously liable for acts of its employees that were not within the scope of their employment or performed for

their employer's benefit. Ordinarily, employers are not liable for the acts of their employees if the employee's acts were not committed within the scope of his or her employment. Pyne v. Witmer, 129 Ill. 2d 351, 359, 543 N.E.2d 1304, 1308 (1989). "In the context of respondeat superior liability, the term 'scope of employment' excludes conduct by an employee that is solely for the benefit of the employee." Deloney v. Board of Education of Thornton Township, 281 Ill. App. 3d 775, 784, 666 N.E.2d 792, 798 (1996). "[G]enerally, acts of sexual assault are outside the scope of employment." Deloney, 281 Ill. App. 3d at 783, 666 N.E.2d at 798.

Exceptions to this general rule do exist, and one such exception involves common-carrier liability. Our supreme court has long held that if an employee of a common carrier intentionally injures a passenger, the common carrier is liable for the passenger's injuries, even if the employee's actions were not in his actual or apparent scope of authority. Chicago & Eastern R.R. Co. v. Flexman, 103 Ill. 546, 552 (1882). Thus, a common carrier can be liable for the intentional acts of its employees even if the intentional act is outside the employee's scope of employment and does not benefit the employer. Under this long-standing Supreme Court of Illinois precedent, a common carrier could be liable for the sexual assault of one of its passengers by one of its employees.

- 9 -

As we previously stated, a school district that operates buses to transport its students is not a common carrier. However, it is performing the same basic function, transporting individuals. Like a passenger on a common carrier, a student on a school bus cannot ensure his or her own personal safety but must rely on the school district to provide fit employees to do so. Accordingly, we conclude that school districts that operate school buses owe their students the highest degree of care to the same extent common carriers owe their passengers the highest degree of care. To hold that adults on public transportation buses are entitled to more protection than the most vulnerable members of our society--namely, children on a school bus--is ludicrous. In fact, holding a school district that buses children to such a high standard is more compelling than holding a common carrier to the same standard.

We are not the first Illinois court to hold that a school district that transports its students by bus owes the student passengers the highest degree of care. In <u>Garrett v. Grant School District No. 124</u>, 139 Ill. App. 3d 569, 575, 487 N.E.2d 699, 702 (1985), the Second District held that a school district that transports its students by bus should be held "to the same standards of care as that imposed on a private party operating as a common carrier."

The District suggests that this court should not follow

Garrett because (1) Doe somehow overruled Garrett and (2) Garrett dealt with a negligent act, not an intentional one, as in this case. We are unpersuaded.

We first note that we would have reached the same decision based on the reasons stated above even if Garrett had never been decided. Further, we are not persuaded that Doe overruled Garrett. The sole question answered in Doe was whether a school district that provided transportation to and from classes was a common carrier (Doe, 287 Ill. App. 3d at 793, 679 N.E.2d at 772), not what standard of care applies to a school district operating a bus for its students. In addition, whether the school bus passenger suffered his injury as a result of negligence or an intentional act is irrelevant.

The District also contends that it should be treated differently than a private party because it is a public, governmental entity. In this regard, the District points out that the duty it owes to students being transported on its school buses is a public-policy decision better left to the Illinois General Assembly.

While common-law rules may not impose liability on a public entity where the Tort Immunity Act applies (Floyd v. Rockford Park District, 355 Ill. App. 3d 695, 704, 823 N.E.2d 1004, 1012 (2005)), that is not the issue before us. Here, this court has a duty to determine what common-law duty a school

district owes to its student passengers when they are being transported on the school district's bus.

Defendant is free to argue on remand that it has immunity as a public body, regardless of its common-law duty, or to lobby the General Assembly, the policymaking body of the State, to specifically make school districts immune from future claims of this type. The legislature may determine, for sound policy reasons, that school districts should not be held to this standard of care. However, as we decide the case before us, we must do so in the context of the law as it now stands, not as policymakers may change it.

We thus conclude that the trial court erred by granting summary judgment on count I (intentional infliction of emotional distress), count III (assault and battery), and count VII (negligent supervision), based on its determination that because the District was not a common carrier, it did not owe Green the highest degree of care that a common carrier would have owed her.

### 3. Scope of Our Holding on This Issue

Our holding on this issue is limited to the common-law duty school districts owe student passengers while the students are being transported on a school bus. It neither enhances nor weakens the duties school districts already owe their students in other circumstances.

C. The Trial Court's Rulings on Counts V, VI, and VIII

### 1. Count V--Negligence Per Se

Green also argues that the trial court erred by granting summary judgment as to count V. We agree.

Count V alleged that the District negligently and carelessly failed to perform proper criminal, child abuse, and neglect investigations of Mansfield, pursuant to section 34-18.5 of the School Code (105 ILCS 5/34-18.5 (West 2002)). In its memorandum in support of its motion for summary judgment, the District argued that Mansfield was hired in 1987 before this statute took effect. However, the trial court stated the District hired Mansfield many years before the statute became effective in 1985. Thus, a question of fact remains regarding when the District hired Mansfield--before 1985 or in 1987.

### 2. Count VI--Negligent Hiring

Green also argues that the trial court erred by granting summary judgment as to count VI (negligent hiring). The District responds that it has immunity under section 2-201 of the Tort Immunity Act (745 ILCS 10/2-201 (West 2006)). We agree with Green.

Section 2-201 provides as follows:

"Except as otherwise provided by [s]tatute, a public employee serving in a position involving the determination of

- 13 -

policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." 745 ILCS 10/2-201 (West 2006).

The District claims that because its decision to hire Mansfield was discretionary, it has immunity under section 2-201.  See Johnson v. Mers, 279 Ill. App. 3d 372, 380, 664 N.E.2d 668, 675 (1996) (village's decision to hire a police officer was discretionary).

Green cites Mueller v. Community Consolidated School District 54, 287 Ill. App. 3d 337, 678 N.E.2d 660 (1997), for the proposition the Tort Immunity Act does not apply to the negligent hiring claim alleged in count VI.  In Mueller, the First District stated as follows:

"[S]ection 2-201 gives government entities immunity from liability for injuries resulting from exercise of discretionary authority.  Here the School District's discretion is fettered by the criminal-background-check statute.  The statute provides that the School District 'shall not knowingly employ a person for whom a criminal

background investigation has not been initiated.' 105 ILCS 5/34-18.5(d) (West 1994). Given the statute's mandatory language, we find that it requires the School District to at least commence an investigation of employment applicants before it is vested with the discretionary authority to hire. We therefore conclude that the School District's failure to comply with the statutorily imposed condition precedent vitiates any immunity it might otherwise have enjoyed under section 2-201 of the Tort Immunity Act for hiring [its employee]." Mueller, 287 Ill. App. 3d at 346, 678 N.E.2d at 666.

We agree with Mueller. However, as stated earlier, a question of fact remains as to when the District hired Mansfield. Thus, we cannot determine whether the District would have immunity under the Tort Immunity Act. Accordingly, we conclude that the trial court erred by granting the District's motion for summary judgment as to count VI.

### 3. Count VIII--Common Carrier

Last, Green argues that the trial court erred by granting summary judgment as to count VIII. We disagree.

- 15 -

The trial court did not err by granting summary judgment as to this count, in which Green alleged a separate cause of action based on the District's status. First, as earlier discussed, the District was not operating as a common carrier. Second, even if the District was so operating, this only created a heightened duty of care for its passengers, not a separate cause of action based merely on that status.

### III. CONCLUSION

For the reasons stated above, we affirm the trial court's judgment as to count VIII, reverse as to counts I, III, V, VI, and VII, and remand for further proceedings. We also direct the trial court to allow Green to amend her complaint, eliminating all references to the District being a common carrier.

Affirmed in part and reversed in part; cause remanded with directions.

KNECHT, J., concurs.

COOK, J., dissents.

- 16 -

JUSTICE COOK, dissenting:

I respectfully dissent. I would affirm the decision of the trial court, granting summary judgment on counts I, III, V, VI, VII, and VIII.

A. Vicarious Liability--Counts I (Intentional Infliction of Emotional Distress) and III (Assault and Battery)

The majority concludes that the District, in the operation of its school bus program, was not acting as a common carrier because it did not hold itself out to serve or, in fact, serve the general public. The majority goes on, however, to create a new "common carrier" rule that would apply to school districts. One problem with that approach is that even common carriers are not vicariously liable for the intentional or criminal acts of their employees unless those acts are within the scope of employment, clearly not the case here. Common carriers, unlike other actors, have a duty to come to the aid or protection of others, but that duty is not the same as vicarious liability. The majority improperly equates the vicarious liability of employers with common-carrier liability.

Under the theory of respondeat superior, an employer can be vicariously liable for the torts of an employee, but only for those torts that are committed within the scope of employment. The employer's vicarious liability extends even to the intentional or criminal acts of its employees when such acts are committed within the scope of employment. Bagent v. Blessing

- 18 -

<u>Care Corp.</u>, 224 Ill. 2d 154, 163-64, 862 N.E.2d 985, 991 (2007). Conduct is within the scope of employment only if it is actuated, at least in part, by a purpose to serve the master. Restatement (Second) of Agency §228, at 504 (1958). Summary judgment was appropriate in <u>Bagent</u> where no reasonable person could conclude that an employee was acting within the scope of employment. <u>Bagent</u>, 224 Ill. 2d at 170-71, 862 N.E.2d at 995 (hospital employee disclosed medical information to patient's sister in a tavern).

Common carriers have duties that others do not have. Generally speaking, Illinois law does not impose a duty to protect another from a criminal attack by a third person unless the attack is reasonably foreseeable and the parties stand in one of four "special relationships," namely: (1) common carrier and passenger, (2) innkeeper and guest, (3) business invitor and invitee, and (4) voluntary custodian and protectee. <u>Hernandez v. Rapid Bus Co.</u>, 267 Ill. App. 3d 519, 524, 641 N.E.2d 886, 890 (1994), citing Restatement (Second) of Torts §314A (1965). In <u>Hernandez</u>, a student was raped by a special[-]education student as she walked unescorted from a bus to the school. The First District reversed summary judgment for the bus company because the company may have been aware that some of the special[-]education students riding its bus with this student had propensities toward violent and criminal behavior. The common-

carrier relationship did not apply in <u>Hernandez</u> because the student had exited the bus safely, but the court applied a similar rule that applied to voluntary undertakings. <u>Hernandez</u>, 267 Ill. App. 3d at 524-25, 641 N.E.2d at 890-91.

The majority cites an 1882 case, <u>Flexman</u>, for the proposition that an employer is vicariously liable for the intentional acts of its employees outside the scope of employment, if the employer is a common carrier. Slip op. at 8-9. The employee in <u>Flexman</u> may have been acting within the scope of employment, helping a passenger look for his watch, when an altercation developed. <u>Flexman</u>, 103 Ill. at 548-49. Even intentional torts may be so reasonably connected with the employment as to be within its "scope." W. Prosser & W. Keeton, Torts §70, at 505 (5th ed. 1984). An employer will be held liable where his bus driver crowds a competitor's bus into a ditch or assaults a trespasser to eject him from the bus. A railway ticket agent who assaults, arrests, or slanders a passenger, in the belief that he has been given a counterfeit bill for a ticket, is within the scope of his employment. But if the employee acts from purely personal motives, he is considered in the ordinary case to have departed from his employment, and the master is not liable. W. Prosser & W. Keeton, Torts §70, at 506 (5th ed. 1984). Whatever the holding in <u>Flexman</u>, Illinois now follows the Restatement, which would not impose vicarious

liability for acts outside the scope of employment. <u>Bagent</u>, 224 Ill. 2d at 163-65, 862 N.E.2d at 991-92.

The majority cites <u>Garrett</u>, which stated that a school district engaged in the transportation of students by bus would be held to the same standard of care as that imposed on a private party operating as a common carrier. <u>Garrett</u>, 139 Ill. App. 3d at 575, 487 N.E.2d at 702. <u>Garrett</u> did not, however, address the vicarious liability of a school district for the actions of its driver. <u>Garrett</u> instead addressed the carrier's duty to protect passengers, despite the general rule that there is no duty to act for the protection of others, a duty which does not terminate until the passenger has had a reasonable opportunity to reach a place of safety. <u>Garrett</u>, 139 Ill. App. 3d at 575-78, 487 N.E.2d at 702-05; see Restatement (Second) of Torts §314A (1)(a) (1965). The complaint in <u>Garrett</u> was that the bus driver had dropped the student off near a railroad track, where she eventually fell. The question did not concern the actions of the bus driver but the actions of the district, which had a duty to select a discharge point that did not "'needlessly expose the pupils to any serious hazards to safety exceeding those which normally attend school bus operations.'" <u>Garrett</u>, 139 Ill. App. 3d at 576, 487 N.E.2d at 703, quoting <u>Posteher v. Pana Community Unit School District No. 8</u>, 96 Ill. App. 3d 709, 713, 421 N.E.2d 1049, 1052 (1981).

The trial court properly entered summary judgment on counts I and III.  Even assuming the District was a common carrier, the District could only be held liable for acts of its employee that were within the scope of employment.  No reasonable person could conclude the acts here were within the scope of employment.

### B. Direct Liability--Counts VI (Negligent Hiring) and VII (Negligent Supervision)

Apart from vicarious liability, the school district may be responsible for its own negligence if it knew or should have known of the necessity and opportunity for controlling its servant to prevent the servant from intentionally harming others. Hills v. Bridgeview Little League Ass'n, 195 Ill. 2d 210, 229, 745 N.E.2d 1166, 1179 (2000), quoting Restatement (Second) of Torts §317 (1965).  To establish this claim of direct negligence, plaintiffs do not have to show that the attack was committed within the scope of employment.  Plaintiffs must show, however, that the employer knew or had reason to know of the need to control the servant and negligently failed to act on that information.  Hills, 195 Ill. 2d at 231-32, 745 N.E.2d at 1180. "Under a theory of negligent hiring or retention, the proximate cause of the plaintiff's injury is the employer's negligence in hiring or retaining the employee, rather than the employee's wrongful act." Van Horne v. Muller, 185 Ill. 2d 299, 311, 705 N.E.2d 898, 905 (1998).  In a case where a kindergarten student

was sexually abused by a school bus driver, a directed verdict in favor of the bus company was affirmed where there was no evidence the company knew or should have known the hiring would create a danger of harm to third persons. Giraldi v. Community Consolidated School District No. 62, 279 Ill. App. 3d 679, 692, 665 N.E.2d 332, 340 (1996) (First District).

The trial court here properly dismissed counts VI and VII because there are no allegations that the District had any knowledge that the bus driver had any propensity to commit these acts or that there was a danger of harm to students.

### C. Negligence per se--Count V

Count V alleges negligence as a matter of law arising from a statutory violation. Count V alleges that the District failed to perform a criminal background investigation as required by section 34-18.5. However, that section does not apply to the District. The section is contained within article 34 of the School Code, which only applies to cities of over 500,000 inhabitants (105 ILCS 5/34-1 through 34-129 (West 2006)). The section that does apply to the District, section 10-21.9(a), excepts school bus driver applicants, at least after its 1995 amendment. 105 ILCS 5/10-21.9(a) (West 2006). Another paragraph, section 10-21.9(f), was amended effective January 1, 1990, to add the following words:

> "After January 1, 1990[,] the provisions

of this Section shall apply to all employees of persons or firms holding contracts with any school district including, but not limited to, food service workers, school bus drivers and other transportation employees, who have direct, daily contact with the pupils of any school in such district." Pub. Act 86-411, §1, eff. January 1, 1990 (1990 Ill. Laws 2549, 2552).

Section 10-21.9(a) was then amended, effective July 1, 1995, to add the words "except school bus driver applicants." Pub. Act 88-612, §5, eff. July 1, 1995 (1995 Ill. Laws 1325, 1326).

In any event, even though there is no question there has been a breach of duty in a negligence per se action, a plaintiff must still show that the defendant's violation of the statute proximately caused the injury. Price v. Hickory Point Bank & Trust, 362 Ill. App. 3d 1211, 1216-17, 841 N.E.2d 1084, 1089 (2006). No evidence in this case suggests that a criminal background check of the bus driver would have disclosed any information that would have placed the District on notice. See Browne v. SCR Medical Transportation Services, Inc., 356 Ill. App. 3d 642, 649, 826 N.E.2d 1030, 1036 (2005) (even if the transportation company had complied with the statute, the company would not have learned of the driver's prior arrests); Giraldi,

279 Ill. App. 3d at 692, 665 N.E.2d at 340 (only thing which could have been known was that driver had a tendency to be late; failure to investigate not a proximate cause of sexual attack on a student).